ARKANSAS STATE HIGHWAY COMMISSION
*v.* HENRY WELTER ET AL

5-4907                                               444 S. W. 2d 65

Opinion delivered August 25, 1969

*Thomas B. Keys, Philip N. Gowen & Hubert Graves,* for appellant.

*George J. Cambiano,* for appellees.

CONLEY BYRD, Justice. This is an eminent domain action by appellant Arkansas State Highway Commission for the taking of 1.94 acres at the intersection of Highways 1-40 and 95 for construction of the westbound

offramp of the interchange, and for a temporary construction easement containing 0.75 acre. Involved in the permanent taking is all or part of 12 lots according to a recorded paper plat of the forty acre tract. The construction easement covers four additional lots.

The Highway Department deposited $100.00 as estimated just compensation for the two easements. From judgment on a jury verdict awarding $23,000.00, the Highway Department appeals contending that there was no basis for the valuation testimony given by the landowners' witnesses and that we should enter a verdict consistent with testimony of the highway department's witnesses.

The landowners, Henry and Lucille Welter and James and Alexia Hart, introduced as valuation witnesses Charles B. Owens, Henry Welter and Gene Huett. All three witnesses readily admitted that the property involved was platted into a paper subdivision in 1959 or earlier and that no streets or utilities existed on the property. The nearest utility was 500 or more feet away. All witnesses followed the paper subdivision description in testifying.

Mr. Charles Owens testified to a before value of $27,000 and an after value of $3,000, for total damages of $24,000. He stated that he arrived at his values by the comparable sales method and that the valuation of the lots was $30.00 per front foot. He also admitted that he compared the undeveloped lots to the fully developed lots in North Hills Addition which were selling for $30.00 per front foot. He also conceded that the North Hills subdivision had all streets, utilities, curbs and gutters in place at the time of the sales involved. On cross-examination he testified:

"Q. You are saying the State of Arkansas should pay Mr. Welter just as much for this undeveloped property as we would have to pay you for in Deerwood or North View?

A. Yes, Sir.

Q. You think that is reasonable?

A. Yes, Sir.

Q. That is your expert opinion?

A. Yes, Sir."

Mr. Henry Welter testified that his property had a before value of $31,000 and a value after the taking of $3,000 for a total damage of $28,000. He stated the property was platted into lots and blocks in 1959 or earlier and has been planted in pine trees for 7 or 8 years. He agreed with Mr. Owens that the nearest utilities are 500 feet away. On direct examination he testified that he had checked into subdivision property and that the North Hills subdivision was selling for $30.00 a running foot and corner lots at $15.00 more. He then gave a $2,-000 a lot value to the lots fronting on highway 95 and a $1,500 per lot value to the back lots. Based upon these valuations he arrived at his damages of $28,000. He admitted that the North Hills subdivision had all the utilities in place with curbs, gutters and paved streets at the time of the sale of those lots. On cross-examination he testified as follows:

"Q. I can't get over the fact, Mr. Welter, that you testified that your undeveloped lots—this is your testimony—you are testifying that these undeveloped lots—this undeveloped subdivision—the lots have the same value as North Hills Subdivision.

A. Yes, sir. Trees come high. They don't come every day.

Q. You are telling this jury, just like Mr. Owens told this jury, that your undeveloped property that has been laying there eight or nine years,

a lot is worth just as much on the market as a lot in a going subdivision?

A. Yes, sir.

Q. Is that what you want them to believe?

A. That's right.''

Mr. Gene Huett, after qualifying as an expert, arrived at a before value of $26,750 and an after value of $3,000 for a total damages of $23,750. On direct examination he testified as follows:

"Q. How did you arrive at the figure of $26,-750.00?

A. I used for the seven front lots down this street the basis of $35.00 per front foot. That is $12,250.00. And five lots on the back at $25.00 a foot, $6,250.00 and two lots for the street, one on the front and one on the back— the one on the front $35.00 a running foot and the other on the back at $20.00—$3,000.00

Q. All right.

A. Three lots for the front the easement $35.00 a running foot, $5,250.00.

Q. How did you arrive at the after value?

A. The three lots that will be returned I figure they would be damaged $750.00. They would be worth $1,000.00 apiece when returned, and $750.00 damage.

Q. That leaves a figure of $23,750.00?

A. That's correct.

Q. Mr. Huett, is there any what we call enhance-

ment value of this property as a result of the highway? I am talking about the property we have before up within the taking?

A. Not that I can see.

Q. Why do you say that?

A. Well, in my opinion, it is on the wrong side of the road to be commercial, to be of value for commercial on Highway 95."

On cross-examination he agreed that the property involved was not in the city limits of Morrilton, that no zoning was involved and that he used the comparable sales method based upon the sale of developed lots in the North Hills subdivision.

We agree with the Highway Commission that the trial court should have struck the testimony of all the landowners' witnesses relative to valuation because there is a total absence of any reasonable or factual basis in the record for comparison of the value of lots in the paper subdivision with the sales price of fully developed lots in North Hill subdivision where all utilities, streets, curbs and gutters were in place. See *Arkansas Highway Commission* v. *Roberts,* 246 Ark. 1216, 441 S. W. 2d 808 (1969).

Under its second point the Highway Commission contends that since there was no substantial evidence to support the verdict appellant is entitled to have the judgment modified and the trial court directed to enter a judgment consistent with appellant's testimony. With this we cannot agree. Both of appellant's witnesses arrived at their after valuations on the basis of an enhancement caused by the freeway offramp. Both witnesses however recognized that there was a high-pressure gas line bisecting the two lots immediately adjacent to the offramp. From the testimony we find that a fact issue existed as to whether the property could be used

for commercial purposes because of the high-pressure line. Appellees' witness Charles Owens testified that no building could be constructed upon the lots because of the high-pressure line. However, when we state that an issue of fact exists on this question, we point out that the issue of fact only exists under the record as made. It may be possible on retrial that any fact issue relative to the enhancement or the possibility of building on the property involved may be resolved beyond any doubt.

Reversed and remanded.