ARK. STATE HIGHWAY COMM. *v.* WATKINS.

5-1556                                    313 S. W. 2d 86

Opinion delivered May 12, 1958.

28

*Mehaffy, Smith & Williams, W. R. Thrasher, Dowell Anders & Bill Demmer,* for appellant.

*Wayne W. Owen & H. B. Stubblefield,* for appellee.

PAUL WARD, Associate Justice. This is a condemnation proceeding involving 15.51 acres of land belonging to appellees. All testimony relative to the value of the land taken from appellees by the Arkansas Highway Department in this suit was directed to a parcel of land consisting of 28.955 acres. The 15.51 acres mentioned above is arrived at as follows: All four of the appellees own an undivided one-half interest in 26.885 acres, amounting to an entire interest in 13.44 acres, and all four appellees own the entire interest in 2.07 acres, making a total taking of an entire interest in 15.51 acres.

A jury awarded appellees damages in the sum of $45,000. Thus the judgment places a value of slightly more than $2,900 per acre for the land actually taken for highway purposes. It will be noted that in arriving at the acreage value above no allowance is made for severance damage or damage to adjoining property. We think, however, as will be later shown, there is no substantial evidence to sustain very little if any such allowances. Moreover we are unable to see how the jury could have fairly included in its total verdict such allowances since it appears that all the adjoining land is owned by only part of the appellees.

On appeal appellant urges two points for our consideration. *One:* It was reversible error for the court to permit the introduction of Exhibit 5 which is a plat showing the subject land and adjacent land divided into

lots, blocks, and streets, and also in permitting the introduction of testimony relative thereto. *Two*: The verdict is excessive in that it is not supported by substantial evidence. Before discussing these points a summary of the essential background facts should be helpful to a better understanding of that discussion.

The subject land is located approximately four air-miles in a northeasterly direction from the Main Street bridge in Little Rock, and is to be used by the Highway Department in the construction of a new super-highway from Little Rock *via* Jacksonville. It is approximately four-fifths of a mile long (running generally north and south) and is 300 feet wide except that it is wider near the middle. The wider portion will be utilized for an over-pass and access roads on both sides of the highway. Approximately half (the south half) of the strip coincides with or includes a portion of the present highway No. 67. The land adjacent to and surrounding the subject strip is not in cultivation but is covered with small oak trees, and the strip is approximately one mile from the Lakewood Addition to North Little Rock.

*One*: The evidence shows that the best and most valuable use that could be made of the subject land and the adjacent land is for residential purposes. It is not disputed that appellees had the right to introduce competent testimony to establish and explain the suitability of the land for that purpose. In attempting to do that, appellees exhibited a Plat (shown as Exhibit 5) to the jury which showed the subject land and the adjacent land to be laid off in lots, blocks, and proposed streets. According to this exhibit there were approximately 70 lots on the subject strip, with approximately 140 lots on the east side, and approximately 190 lots on the west side thereof. After the Plat had been handed to the reporter and marked for identification only, the following occurred:

Questions by Mr. Stubblefield:

Q. Just hold that, if you will, so the jury can see your explanation, and tell the jury what that is.

A. This is a map prepared by me showing the land being condemned in the different colors due to identification and by parcel numbers, the red lines show the existing highway and showing where the project starts through the land owned by Mr. Matthews. This is shown over a layout of streets and roads which is the normal way that we arrive at land cost and values of land.

The Plat was offered in evidence over the objections of appellant and when the witness admitted the area had not "been platted as indicated by the map," the court sustained the objection. It is not clear to us however, whether the Plat was later considered in evidence. As stated before, the Plat is a part of the record here, marked Exhibit 5, without further explanation, and it was shown to the jury. In any event, we think the effect of the court's ruling, in sustaining appellant's objection, was erased by what occurred thereafter. On re-direct examination of the witness (Arthur H. Thomas) he was asked to explain to the jury in a little more detail about the number of lots the land was going to be divided into, when appellant again objected. The Court stated: "He may testify as to how he arrived at it without reference to the exhibit." Witness was then asked: "Q. "You arrived at the figure by figuring out how many lots?".

Again appellant objected, but was overruled. Exceptions were saved by appellant. Witness then stated:

A. There is one tract of this land that lies adjacent and along an existing paved road which can be used for development; where the road is already dedicated, you can get four lots of the type and size that is being developed in Lakewood per acre and I put a per front foot on that property of $25.00 per foot which is about $2,000 per lot. I think that is a very conservative figure since we are getting $3,500 per lot in Lakewood. On the land being condemned, not fronting on existing pavement, I used three and a half lots per acre and a figure of $1,600 per lot for those eighty-foot wide lots and arrived at this figure that way.

Q. And that in your opinion was the value per acre on March 12, 1957?

A. I think that is a very conservative figure because we are getting much more than that in Lakewood right now.

Previously the witness had stated that lots in Lakewood sold for $6,000 to $12,000 a piece. Finally the witness stated that in his opinion the land in question was worth $6,000 per acre.

There can be little doubt that the above testimony and other testimony of a similar nature might have influenced the jury in fixing a value on. the subject land. Such testimony allowed the jury to compare the value of the subject lots in Lakewood Addition without any knowledge of numerous factors that would have to be considered in order to make the comparison fair and equitable. It necessarily follows then that the jury's verdict would be based on conjecture and speculation. Our research of the numerous authorities dealing with testimony of this nature indicates it is universally condemned. The general rule is well stated in Nichols, Eminent Domain, Third Edition, Chapter 12, Sec. 3142(1) in the following language:

"It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush or boulders. The measure of compensation *is not* (emphasis supplied) however, the aggregate of the prices of the lots into which the tract could best be divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and it is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use."

In *United States* v. 620 *Acres of Land, Etc.*, 101 Fed. Supp. 686, which concerned the condemnation of land in Marion County, Arkansas, the Court, at page 690, approved this statement:

"To warrant the admission of testimony as to value for purposes other than that for which it is actually used, however, regard must be had for existing conditions and wants of the community, or such as may reasonably be expected in the immediate future. The uses considered in fixing value must be so reasonably probable as to have an effect upon the present market value of the land and a speculative value cannot be considered."

In the case of *Carolina Power and Light Company* v. *Clark,* 243 N. C. 577, 91 S. E. 2d 569, the court, in dealing with fixing the value of property based on its best adaptable usage, said that consideration must be given to existing business "or wants of the community, or such as may be reasonably expected in the immediate future to affect present market value." It was then said by the court: "purely imaginative or speculative value should not be considered," citing a long line of cases. This court, in *L. R. Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, made this pertinent observation:

"One who anticipates an increase in the value of his property may feel it a hardship to surrender it without receiving more than its present market value, but it would be a hopeless task to either measure or satisfy the anticipations of a sanguine land owner."

Applicable to the question here considered is the language approved in *Louisiana Ry. & Nav. Co.* v. *Baton Rouge Brickyard,* 136 La. 833, 67 So. 922:

"At the time of the institution of this suit the tract in question had not been subdivided, and the question before the jury was as to the market value as a whole, considering all the uses to which it was adapted. The value of the tract for town lot purposes was one of the factors to be considered, but what the owner or purchaser might realize by a subsequent subdivision of the property and sale of lots partakes too much of the character of speculation to serve as a basis of valuation at the date of the institution of the present suit."

"It is proper to show that the property is suitable for division into village lots, and that it is valuable for that purpose, but it is not proper to show the number and value of such lots." Lewis Eminent Domain, Vol. 2 (2nd Ed.) P. 1058.

The matter of determining the value of property on the basis of a future subdivision into lots was under consideration in *City of Philadelphia* v. *United States,* 53 Fed. Supp. 492. There this question was asked: "Into how many lots would you subdivide this land?" The court in commenting on the propriety of the above question, said: "The question was not framed to test the basis of the witness" estimate, but was designed to circumvent the prohibition against introducing figures of subdivision. To have permitted this question, even on cross-examination, would have introduced a speculative feature to the minds of the jurors and would have been contrary to the well settled law of Pennsylvania." The court then quoted, with approval, the following:

"Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted; but it is the tract, and not the lots into which it might be divided, that is to be valued."

The reason for the rule above set out is well demonstrated in the case under consideration. While some of appellees' witnesses explained that, in comparing the value of subject land and lots with other subdivisions of Little Rock and particularly with Lakewood Addition; they had taken into consideration the location and the necessity of supplying paved streets, water and sewerage, etc., yet that fact in no way eliminates the element of chance and speculation. On the other hand, such explanation merely emphasizes that element. Any attempt to determine the cost of such improvements would have entailed the use of time and technical knowledge beyond the scope of practicability and reason. In addition to the above, many more speculative matters would arise for

consideration. For example: How much other land in the vicinity is available for subdivisions; What will be the future demand for additional building sites; How long will it be before the subject land is made ready for the erection of dwellings; How fast will the lots be sold, and how much will be the finance charges, and; What will be the cost in real estate commissions for selling the property, and what will be the expense of numerous other items that could be mentioned?

It has been suggested that this court has approved the introduction of a Plat in a case similar to the one under consideration in *Ark. State Highway Comm.* v. *O. & B. Inc.*, decided April 22, 1957, 227 Ark. 739, 301 S. W. 2d 5. The facts in that case, however, were entirely different. There the subject land was a part of existing subdivisions of the city of Jacksonville. In that case the court pointed out the vital distinction to which we have referred by stating:

"This is not a case where use for subdivision purposes is merely speculative and too remote to influence present market value. As previously indicated, it is undisputed that the land of appellees was adjacent to and surrounded by well developed residential sections of the fast growing City of Jacksonville and that its best and most logical use was for residential lot development. In these circumstances we have held the testimony objected to by appellant to be admissible to establish market value."

For the reasons set out and explained above we conclude, therefore, that the admission of the indicated testimony constituted reversible error.

*Two*: We have also concluded that the judgment for $45,000 is excessive. In order not to unduly extend this opinion we shall, in attempting to justify this conclusion, rely on all pertinent portions of what has already been set forth and upon a brief summary of the rest of the testimony relative to the value of the 15.51 acres of land.

A little more than a year before this litigation was instituted appellee Matthews bought and appellee Watkins sold the subject land (as a part of a 1,000 acre tract) for $225 per acre. The record shows that both parties knew at the time of the probability that the new highway would be built. It further appears from the contract of sale that the parties themselves anticipated some of the land might be taken by condemnation, and that they apparently thought the remuneration would not amount to more than $600 per acre.

Appellant's witness, Harry A. Pittard, who showed a familiarity with the subject land and also the development in Lakewood, placed the market value of the subject land at $582 per acre at the time of taking. Wesley Adams, another witness for appellant, who showed a familiarity with the subject land and lands in the vicinity, and who, like Pittard, took into consideration all mentioned factors bearing on its utilization for residential development, valued the subject land in several different parcels as it is described in the pleadings and as shown by Exhibit 5. The highest value was $750 per acre for certain portions and the lowest for any of it was $500 per acre. James H. Larrison, another witness for appellant, who was experienced in the sale and valuation of real estate in the Little Rock vicinity and who had inspected and appraised property for many years, made an inspection of the property in question. After taking into consideration the best usage of the property for residential purposes he fixed a value of $500 per acre.

Over against the above appellee, Matthews, together with other witnesses who were apparently as well qualified as appellant's witnesses, fixed the value of the subject land as high as $6,000 per acre. Matthews admits paying $225 per acre for 1,000 acres but said two-thirds of that acreage was not as valuable as the subject land. It seems to follow from this that one-third of the purchased land at $6,000 per acre would amount to much more than the total purchase price—in fact to $1,775,000 more. It must also be remembered that the other appellee sold the land for the same price that Matthews

paid for it. In addition, appellees estimate that other land, not taken, was damaged several thousands of dollars, and that they were entitled to still more damages on account of severance.

We cannot escape the impression that appellees were over impressed with the value of the subject land based on their expectations of what it would be worth sometime in the future when it might be ultimately improved and sold as lots. However, as heretofore pointed out, full credence cannot be given to testimony based on such eventualities in arriving at present market value.

We do not think appellees are entitled to severance damages. One witness at least stated he did not know appellant's plans provided for a wide over-pass across the subject land with walkways on either side, and also for a complete system of access roads. The record reveals such to be the plans. We find no substantial evidence to show that other lands belonging to appellees, or any of them, will be reduced in value because of the construction of the new highway. The evidence on the part of appellant was that the value of the said lands would be increased rather than decreased. Such would appear to be the implied effect of appellees' testimony. That is, the lands which one of them sold for $225 per acre a short time previously are now worth around $5,000 or $6,000 per acre.

In summing up we find, under the most liberal view, no substantial evidence to support a valuation of the subject land in excess of $1,500 per acre.

Since the error pointed out in the first part of this opinion does not reach appellant's liability for damages in some amount, this court can, in accordance with established procedure, offer a remittitur. See: *Chicago, Rock Island & Pacific Railway Co.* v. *Caple, Administrator,* 207 Ark. 52, 179 S. W. 2d 151; *McCord* v. *Bailey and Mills,* 195 Ark. 862, 114 S. W. 2d 840, and; *St. Louis, Iron Mountain & Southern Railway Company* v. *Adams,* 74 Ark. 326, 85 S. W. 768.

Therefore, if appellees will enter a remittitur so as to permit a recovery of only $23,265, the judgment so reduced will be affirmed by us. Otherwise, if such remittitur be not entered within 17 calendar days after the date of delivery of this opinion, the judgment of the trial court will be reversed and the cause remanded for a new trial.

HARRIS, C. J., and McFADDIN, J., would affirm for the full amount.