ARKANSAS STATE HIGHWAY COMM'N *v.*
CARL SCHMOLL

5-5070                                        449 S. W. 2d 938

Opinion delivered February 9, 1970

*Thomas Keys* and *Virginia Tackett,* for appellant.

*Williams & Gardner,* for appellees.

CONLEY BYRD, Justice. This litigation was formerly before us in *Arkansas State Highway Commission v. Schmoll,* 245 Ark. 21, 430 S. W. 2d 852 (1968). Following the reversal, the matter was again submitted to a jury which awarded a judgment of $52,000. For reversal of the $52,000 judgment, appellant Arkansas State Highway Commission contends that the verdict is excessive and that there is no substantial evidence to support it.

The record shows that Mr. Schmoll's ownership consists of 107.67 acres being SW¼ of SW¼ of Sec. 18, the NW¼ of the NW¼ of Sec. 19, and a portion of the NE¼ of the NW¼ of Sec. 19, all in T. 7 N., R. 18 W. The property is bordered on the south by Highway 64. The Highway Department is here taking 84.52 acres, for construction of I-40 and the balance for a scenic drive. The southeastern corner of this property lies some 200 feet west of the city limits of Atkins, Arkansas. The topography of the property is such that it commences at the foot of and rises to the top of Crow Mountain.

For valuation purposes appellee introduced himself and Jackson Ross, a real estate expert. Mr. Schmoll testified that his property had a before value of $135,110 and an after value of $41,725. In arriving at his before value he used $750 per acre for the north 40 and $1,500 per acre for the south 63.18 acres. On cross-examination he testified that the attorney for the Highway Department was correct in assuming that he was saying that

property similar to his upper 40 acres was selling on the market in January 1966 for $750 an acre. At other times Mr. Schmoll stated that he did not use compar-able sales but just used his opinion of what it was worth. However he stated that the Fengler Estate, just east of the lower portion of his property, sold some lots, 150 by 150, for $1,500 per lot. According to his testimony all such lots were on existing roads. Another was Roy Kindrick's sale of 2 acres across Highway 64 for $3,000. A third sale was the Orlando Pryor land —a 5 acre sale for $5,000 on the highway near the Highway 64 frontage of the subject property. All of Mr. Schmoll's testimony was designed to show that the highest and best use of his property was for residential building sites.

Mr. Jackson Ross, an appraiser, testified to a before value of $113,916 and an after value of $33,000 resulting in damages of $80,916. He stated that he made a study of land values in or near Atkins in January 1966, and that his study showed that near the subject property there were "several lots that had sold off north of 64 highway at that time." He readily admitted that the only road frontage on Mr. Schmoll's property is Highway 64 and that there are no roads to the back of Mr. Schmoll's property. He further admitted that all of the comparable sales he considered were on a road of some kind. The comparable sales considered by Mr. Ross were as follows:

1. Emil Fengler et ux, to Paul and Lois Raney, a 150 ft. by 150 ft. parcel for $750.00, which he described as roughly 1/4 of an acre;

2. Fengler to Hurshel and Ruby Miller, a 150 ft. by 218 ft. parcel for $800.00;

3. Fengler to Robert Raney, 150 by 150 ft. for $750.00;

4. Fengler to Dovie Miller, a 190 ft. by 195 ft. parcel for $800.00, which he described as "a frac-

tion over half an acre;"

5. Joe Stephenson to Melvin Fuller, a 150 ft. by 200 ft. parcel for $1,000.00, described as being just off Highway 105; and

6. Pryor Estate to Pratt, 5.7 acres for $5,000.00 which he described as being bought for the purpose of putting in a market (this was described as being comparable to Mr. Schmoll's land adjacent to Highway 64).

Throughout his testimony Mr. Ross referred to a parcel 150 ft. by 150 ft. as approximately a quarter of an acre.

Mr. Walker Watson, an appraiser for the Highway Department, arrived at a before value of $27,750 and an after value of $19,750 for total damages of $8,000. Mr. A. R. Jordan, a Russellville real estate broker and appraiser, arrived at a before value of $30,040 and an after value of $21,915 for total damages of $8,125. Mr. Watson used the following comparable sales:

1. A July 1965 sale from Nottenkamper to Kyle, 12 acres for $13,000—he allocated $7,500 to improvements, leaving $5,500.00 for 12 acres of land at $460 per acre;

2. A 1962 sale from Duval to McElroy 500 ft. west of Schmoll's property in which a tract with 104 ft. frontage on Highway 64 by 400 ft. deep sold for $500;

3. A 1962 sale from Gibson to Willcutt of a 20 acre tract that sold for $6,000—he allocated $3,-000 to improvements and $3,000 to land, arriving at a per acre value of $150; and

4. A 1964 sale 1¼ miles west of Mr. Schmoll's property where a 44 acre tract sold for $7,000 or $175 per acre (at the time of trial 3 houses had

been built on the 44 acres.)

Mr. Jordan used the following comparable sales:

1. A sale from Kinslow to Hudson which compared to the back wooded part of Mr. Schmoll's property—a 110 acre tract at $6,000 or $55 per acre;

2. A sale from Bowden to Cole, a 44 acre tract at $175 per acre which he considered comparable to Mr. Schmoll's open lands;

3. The sale from Duval to McElroy used in Walker's appraisal; and

4. Nottenkamper to Kyle, a 12 acre sale used by by Mr. Walker—however Mr. Jordan allocated $6,500 to improvements and $6,500 to land for a per acre value of $541.

In *Arkansas State Highway Commission* v. *Watkins,* 229 Ark. 27, 313 S. W. 2d 86 (1958), we pointed out the speculative nature of evidence which uses the sale price of lots for comparable sales in arriving at the valuation of large tracts of raw ground in this language:

"The reason for the rule above set out is well demonstrated in the case under consideration. While some of appellees' witnesses explained that, in comparing the value of subject land and lots with other subdivisions of Little Rock and particularly with Lakewood Addition, they had taken into consideration the location and the necessity of supplying paved streets, water and sewerage, etc., yet that fact in no way eliminates the element of chance and speculation. On the other hand, such explanation merely emphasizes that element. Any attempt to determine the cost of such improvements would have entailed the use of time and technical knowledge beyond the scope of practicability and reason. In addition to the above, many more speculative mat-

ters would arise for consideration. For example: How much other land in the vicinity is available for subdivisions; What will be the future demand for additional building sites; How long will it be before the subject land is made ready for the erection of dwellings; How fast will the lots be sold, and how much will be the finance charges, and; What will be the cost in real estate commissions for selling the property, and what will be the expense of numerous other items that could be mentioned?"

The present case is a classic example of the speculative nature of such testimony. Here the proof shows that the property commences at the foot of Crow Mountain and slopes up to or near the top of Crow Mountain. Both Schmoll and his witness Ross relied entirely upon plot sales for individual building sites, all located along existing roadways and none more than a quarter mile north of Highway 64. Yet the record shows that Schmoll's property extends one-half mile north of Highway 64.

While the sales of the individual building plots were properly admitted into evidence for comparison to Mr. Schmoll's property that is similarly situated, it is obvious that such sales are speculative when used with respect to property some distance from a roadway. For instance, the record here shows that Emil Fengler from 1961 to 1965 only sold 5 parcels for building sites. Notwithstanding this, Mr. Ross insisted that there was a ready market for every building site into which Mr. Schmoll's property could be subdivided. Also both Schmoll and Ross assigned the back 40 a valuation equal to one-half of the value of the front 40, while admitting that all of their parcel sales were south of the back 40 and that the back 40 was further up the incline toward the top of Crow Mountain.

Therefore, it appears to us that appellee is using plot sales (comparable to the sales of finished lots) along existing roadways with other improvements and comparing the price paid for the acreage involved in

those sales with his raw acreage for purposes of determining its value without taking into consideration the many variables such as demand; the cost of engineers; the installation of improvements, such as roads, water and sewer or septic tanks; and the numerous man hours and financing charges that go into the development of a residential area.

For the reasons stated we find that there is no substantial evidence in the record to sustain a judgment for $52,000.

Reversed and remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent because I think the court has actually weighed the evidence in this case and, after comparing the testimony of value witnesses presented by appellant with that of value witnesses for appellee, decided that the appellee's evidence failed to provide substantial support for the jury verdict, or that the sales relied upon by appellant's witnesses were more comparable than those relied upon by appellee. I do not see how it can be said that the record on this second trial and the arguments advanced by appellant here require a second reversal of this case.

In the first place the court's opinion is based, in part, upon a premise not really argued by appellant. Here, I refer to the treatment of the Schmoll testimony. The argument as to the deficiency in the Schmoll testimony is epitomized in the following paragraph from appellant's brief:

"Mr. Schmoll, valuing his back forty at $750 per acre and the rest of it at $1,500 per acre, mentioned sales, but said positively he didn't value his land based upon those sales (R. 103). He admitted on redirect that he knew of another sale, but on cross

examination said he didn't know if he did or did not take it into consideration, because he didn't figure it had the acreage (R. 109). Appellee himself, eliminates his testimony from consideration."

Thus, appellant relied upon the landowner's lack of reliance upon comparable sales to eliminate his testimony from consideration. Of course, this is not the test of substantiality of a landowner's testimony. Schmoll had inherited part of the land and had bought the interest of his brothers and sisters in 1946. He was familiar with all of the land, its characteristics, the portions of it which were cleared and the improvements on it. He knew his tract was within 200 feet of the city limits of Atkins, and within 1/4 mile of the city water tank, that gas, lights and a water supply with adequate pressure were available to the property and that there had been development of property just east of his. He *mentioned no sale* on direct examination. On cross-examination he stated that he did not base his testimony on any sales.

Since Schmoll did not rely upon comparable sales, it was up to appellant to otherwise demonstrate upon cross-examination that there was no reasonable basis whatever for his testimony.[1] *Arkansas State Highway Commission* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201, *Arkansas State Highway Commission* v. *Carter,* 247 Ark. 272, 445 S. W. 2d 100; *Arkansas State Highway Commission* v. *Stobaugh,* 247 Ark. 231, 445 S. W. 2d 511. His knowledge or lack of knowledge of market values of comparable lands went only to the weight to be given to his testimony. *Arkansas State Highway Commission* v.

---

[1] If the court intends to imply that the burden is on the landowner to demonstrate a reasonable basis for his testimony, I adhere to the views expressed in my dissenting opinion in *Arkansas State Highway Commission* v. *Geeslin,* 247 Ark. 553, 446 S. W. 2d 245, at least until such time as the court sees fit to expressly so declare without leaving the idea to be drawn inferentially.

*Fowler,* 240 Ark. 595, 401 S. W. 2d 1; *Arkansas State Highway Commission* v. *Drennan,* 241 Ark. 94, 406 S. W. 2d 327; *Arkansas State Highway Commission* v. *Maus,* 245 Ark. 357, 432 S. W. 2d 478. See also *Arkansas Highway Commission* v. *Carter,* supra.

There may have been some inconsistency in our decisions on this point but throughout all of them, it seems that the landowner's opinion as to value constitutes substantial evidence if it is based upon his familiarity with the land and is not an arbitrary figure plucked from the air with no relation to any fact in the record.

In *Arkansas State Highway Commission* v. *Covert,* 232 Ark. 463, 338 S. W. 2d 196, the landowner's testimony, based upon his statements as to the size of his lot and the size and nature of the improvements thereon, was held to be substantial, even though he gave no basis for his value of $17,500 stated in response to a query as to what he would sell the land for if he were willing to sell and someone were willing to buy.

In *Arkansas State Highway Commission* v. *Fowler,* 240 Ark. 595, 401 S. W. 2d 1, a landowner's testimony and refusal to strike it because he gave no basis for his evaluations were held proper because of the rule that a landowner is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns, regardless of his knowledge of property values. It was held that there was no merit in an attack on the substantiality of the evidence.

In *Arkansas State Highway Commission* v. *Sargent,* 241 Ark. 783, 410 S. W. 2d 381, where the question was whether there was substantial evidence to support the verdict, we recalled that this court had many times held that the owner of real property was qualified to express an opinion as to its value when his familiarity with the *property* was shown.

In *Arkansas State Highway Commission* v. *Maus,*

245 Ark. 357, 432 S. W. 2d 478, the landowner's testimony based upon his familiarity with the land as owner and lifetime resident was held to be substantial.

In *Arkansas State Highway Commission* v. *Duff*, 246 Ark. 922, 440 S. W. 2d 563, we held the landowner's testimony substantial because of his demonstrated familiarity with the land as owner and lifetime resident.

Whether a witness has such knowledge of the facts as to make his opinion of any value is a question largely within the discretion of the trial judge. *Arkansas Power and Light Company* v. *Morris*, 221 Ark. 576, 254 S. W. 2d 684.

Of course, the testimony of a landowner may not be substantial where: (1) there is nothing to indicate that it takes into consideration the potentiality of the land for the purpose for which it has value or evidence to show that potentiality, *Arkansas State Highway Commission* v. *Byars*, 221 Ark. 845, 256 S. W. 2d 738; (2) the landowner not only has no knowledge of land values, but does not reside on the land, has little familiarity with it and bases his opinion as to value upon sentimental desires and the desires of a deceased spouse, *Arkansas State Highway Commission* v. *Darr*, 246 Ark. 203, 437 S. W. 2d 463; or (3) the value stated is an arbitrary figure that has no relation whatever to any fact in the record, *Arkansas State Highway Commission* v. *Stanley*, 234 Ark. 428, 353 S. W. 2d 173.

I submit that the owner's testimony was substantial.

The qualifications of Jackson Ross as an expert on real estate values is not questioned. He valued 60 acres of the land at $1,200 per acre and 44.86 acres at $600. He testified that there had not been much growth in the city limits of Atkins, but that there had been rapid growth to the north, south and west. The Paul Raney property was 1/4 mile north of Highway 64 and about 200 feet from the Schmoll land. It was purchased in

1964. The Pryor-Pratt sale was not more than a quarter of a mile away. Ross did not appraise the Schmoll land as residential lots but as acreage for a developer to buy and develop. Schmoll had testified that the highest and best use of his property was for building and residential sites. Ross considered that there was a market and demand for such lots near the city limits, and that they could be sold as fast as streets and utilities were built. He stated that there was a great demand for a big acreage like this for this purpose.

On cross-examination Ross was asked how many lots a developer could get out of the property and replied that he would not make that estimate because he did not base his appraisal on lots. The cross-examiner persisted by an immediate repetition of the question, also asking if a developer would not have to consider the number of homesites he could get out of the property in considering what he would pay for it. When the witness did not give the number of homesites, he was again asked how many lots or building sites a developer would have sold by the time he got the property fully developed. Ross responded that he had not "figured" the property in building sites. Only upon a persistent repetition did he finally respond that he would say that a developer could get four good building sites per acre. Even this fishing expedition, with the attendant hazards pointed out in *Arkansas State Highway Commission* v. *Russell*, 240 Ark. 21, 398 S. W. 2d 201, and *Arkansas State Highway Commission* v. *Fowler*, 240 Ark. 595, 401 S. W. 2d 1, did not reveal any information that would have rendered Ross' value opinion inadmissible. I do not see how it could render it insubstantial. It is nowhere shown that he considered the Schmoll property value on the basis of the number of lots that could be carved from it.

If appellant's theory is followed, there will be no way that an undeveloped tract of land can be valued on the basis of its highest and best use when it is available for development. Appellant's witness Watson admitted that the highest and best use of the Schmoll property

along the highway to a depth of 400 feet consisting of about 21 acres was for residential purposes. He also said that a tract 1¼ miles west of the Schmoll property contained frontage which had been developed for residential purposes, that three houses had been constructed thereon, and that the entire 44 acres was being developed for residential purposes along the highway. While he stated his opinion that there was not a demand for a 100-acre subdivision, his testimony tends to support that of Ross as to the existence of a demand for residential property. Surely the Schmoll property near the city limits and utilities would be far more desirable than this tract so much farther away, and would have a market value many times as great.

It is wholly unrealistic to say that sales of smaller tracts in proximity to the land in question furnish no indicia of market values in the vicinity. They certainly influence the market. When they do, it is not proper to rule them out as not comparable, as a matter of law.

This case is a far cry from *Arkansas State Highway Commission* v. *Watkins,* 229 Ark. 27, 313 S. W. 2d 86. There the value expert stated that the value was arrived at by determining the number of lots into which the property could be subdivided and valuing each lot by comparison to prices being paid in a fully developed subdivision. The fault lay in his failure to value the tract as a whole, as Ross did here. The speculative nature of the testimony was there found in the inability of the jury to compare the lots in the developed subdivision without having any knowledge of numerous factors that would have to be considered in order to make the comparison fair and equitable. No such deficiency exists here.

I would affirm the judgment.