ARKANSAS STATE HIGHWAY COMMISSION *v.*
O. A. ALLEN ET AL

5-5960                                        484 S.W. 2d 331

Opinion delivered September 11, 1972

*Thomas B. Keys* and *James N. Dowell,* for appellant.

*John T. Gunter* and *Hugh L. Brown,* for appellees.

J. FRED JONES, Justice. This is an eminent domain case involving 11.74 acres of land taken by the Arkansas Highway Commission from a 13.75 acre tract belonging

to the appellees, O. A. Allen and wife, in connection with highway construction near Beebe in White County, Arkansas.

Mr. Allen testified that before the taking, his land, including the improvements thereon, was worth $33,410 and after the taking that portion of the land remaining was only worth $10, leaving the amount of his damage or just compensation at $33,400. It was stipulated by the parties that the value of the improvements in the taking amounted to $7,310. Mr. Terrill Huff testified as an expert appraiser for the owner. He testified to before and after values of $22,361 and $63 respectively, leaving a difference of $22,-298 as his estimated amount of damage or just compensation. Adams and Mashburn testified as expert appraisers for the Highway Commission. They estimated the total damages or just compensation at $12,700 and $12,-950 respectively. The jury returned a verdict in favor of the Allens for $27,000 and judgment was entered thereon. On appeal to this court, the Highway Commission relies on the following points for reversal:

"The trial court erred in refusing to strike the testimony of the landowner as to the value of the property before the taking.

The trial court erred in refusing to exclude from the consideration of the jury sales alleged to be comparable by the landowner, who was not in fact familiar with the properties involved.

The trial court erred by commenting on the evidence and by refusing to exclude from the consideration of the jury, as a basis for witness Huff's opinion, sales that did not meet legal standards of comparability.

The trial court erred in refusing to exclude the testimony of witness Huff based upon subdividing the property into lots and selling the individual lots over a period of time.

The verdict is excessive and is not supported by substantial evidence."

We deem it unnecessary to discuss separately each of the specific points as designated by the appellant, because the judgment of the trial court must be reversed for the primary reason that both Mr. Allen and his expert witness, Mr. Huff, employed the wrong method in arriving at their opinion as to the market value of the land involved. Instead of basing their opinions on the open market value of the entire tract, on the date of taking, if sold for its highest and best use as future residential building plots, both Allen and Huff based their opinions on the aggregate of their estimated number and value of the building plots into which the acreage could be divided and eventually sold. This procedure was thoroughly condemned in the case of *Ark. State Highway Comm'n* v. *Watkins,* 229 Ark. 27, 313 S. W. 2d 86, where we adopted language from Nichols, Eminent Domain, Third Edition, § 3142 (1), as follows:

" 'It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush or boudlers. The measure of compensation *is not* (emphasis supplied) however, the aggregate of the prices of the lots into which the tract could best be divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and it is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use.' "

A sample of Mr. Allen's testimony in this connection appears in the record as follows:

"Q. Mr. Allen, what, in your opinion, was the fair market value of your property, just as it was sitting there, 13.75 acres, prior to the Highway Department ever coming into your life?

A. Well, you mean what I could have accomplished with that property?

Q. That's correct.

A. I would say $33,410.

Q. $33,410?

A. Yes, sir, by selling it in acre tracts.

Q. I want to make sure that I understand you correctly. You are saying that the highest and best use would be to sell it in small acreage tracts?

A. Yes, sir, I would say in acre tracts.

Q. For dwellings, or for what purpose?

A. I would say for dwellings. That property would sell as small acreage tracts for homesites.

\* \* \*

Q. Then what, in your opinion, would be damages or just compensation, or just payment to you for the lands taken by the Highway Department, and damages suffered to your remaining land? What, in your opinion, is the just compensation?

A. Well, in my opinion, the way I could have sold it in lots, I think the land was worth $33,410; well, I have the acre left that I don't value anything, so I'll say, so deducting that, in my opinion, I think would figure out $33,400."

Mr. Allen then testified as to what he considered other comparable land sales in the community where small building sites sold for around $1,500 per acres, but he testified that he had not seen these properties and in fact knew nothing about them except their acreage and sale price. As an example, the one acre plot near Beebe which sold for $1,500 as testified by Mr. Allen, was from Pride to Hubbard and on cross-examination he testified as follows:

"Q. On this Pride to Hubbard sale in March of 1970, have you ever seen that property?

A. I know approximately where it is; it's right off the highway.

Q. Have you ever seen the property?

A. Well, it's been years ago; it's been 25 years ago since I've been down that road.

* * *

Q. But you really don't know what the condition of it was at the time it sold?

A. Well, not exactly, no. I think it was sold for home-sites, so it must have been a field or something.

* * *

Q. And what kind of road does it have going back to it from the highway?

A. Well, it used to be about a half gravel road; now, I haven't been down in that country for years.

Q. So you really don't know what is on each side of this acre, or anything about it, do you?

A. No, I don't."

Mr. Huff testified that in his opinion the before taking value of the property was $24,110 and that its highest and best use would be to sell off in lots or plots for residential purposes. It is obvious from the record that Mr. Huff based his overall $24,110 valuation on the aggregate of what he thought the property would sell for if sold in one or two acre plots.

"Q. You placed a per acre value on the entire tract?

A. That's right, *provided it could be used as I suggested, sell it off in acre to two-acre plots.*

Q. Could you give us a breakdown as to what that per acre value is, assuming it was sold?

A. About $1,200 an acre." (Emphasis added).

The reason for the invalidity of Mr. Huff's testimony in this connection is pointed up in the record by an objection from Mr. Allen's attorney when Mr. Huff was asked on cross-examination about how long he would estimate that it would have taken from the date of taking to have sold the property in one and two acre plots. The record on this point appears as follows:

"MR GUNTER: Your Honor, I don't know that the question is relevant because this could take one year, it could sell in six months. It would be too speculative for the witness to try to answer. We are concerned with the fair market value and highest and best use on July 25, 1968.

THE COURT: I think the question would go to the extent of the market. You may proceed.

BY MR. GRAVES:

Q. About how long do you think it would take, in your opinion, how long would it take from July 25, 1968, to sell thirteen lots out there?

A. That would be pure speculation if I made that. I wouldn't say.

Q. You wouldn't expect he could sell them all on the same day, on that one day, would you?

A. No, sir.

Q. So if you sold this in individual lots the way you are talking about, you are assuming, then it would be sold over some period of time, at least, aren't you?

A. That's right.

Q. Well, since we are concerned with what it would sell for on July 25, 1968, you didn't think you ought to value this as of that date?

A. As a whole?

Q. Yes, sir.

A. As a whole it is not big enough to farm.

Q. Well, the whole thing wouldn't be sold the way you talked about on the one day, though, would it?

THE COURT: That wouldn't be necessary, Mr. Graves. He wouldn't have to consider that it would all be sold on that day.

MR. GRAVES: As I understand it—

THE COURT: The question is, what is the market, his opinion of the possible market value.

MR. GRAVES: On that date.

THE COURT: Yes, sir. It doesn't have to be sold on that date.

MR. GRAVES: But he's basing it on selling it one lot at a time. I'm moving that this Court exclude his testimony on that basis.

THE COURT: Overruled. I don't think it has any merit.

MR. GRAVES: Note my exception.

Pass the witness."

In testifying as to what he considered to be comparable sales, Mr. Huff testified concerning three sales to purchasers having the right to exercise the power of eminent domain in the acquisition of the property purchased. The appellant's motion to strike Mr. Huff's testimony pertaining to these sales should have been granted but since this case must be reversed for the reasons already stated, we only urge the reading of our decision in *Yonts* v. *Public Service Co.,* 179 Ark. 695, 17 S. W. 2d 886, before the cause is tried again on remand.

The judgment is reversed and this cause remanded for a new trial.

Reversed and remanded.