STATE of Missouri, ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

WILLIAMSVILLE STONE COMPANY, INC., et al., on the Exceptions of Lester M. Terrell and Ruth M. Terrell, Defendants-Respondents.

No. 12127

Missouri Court of Appeals, Southern District, Division Three.

Sept. 11, 1981.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Oct. 6, 1981.

Application to Transfer Denied Nov. 10, 1981.

**408**

Bruse A. Ring, Rich Tiemeyer, Jefferson City, for plaintiff-appellant.

David W. Keathley, Poplar Bluff, for defendants-respondents.

PREWITT, Judge.

Plaintiff brought suit to acquire land for construction and maintenance of a highway north of Poplar Bluff, Missouri. Defendants Terrell owned property located approximately ⅛ of a mile north of Poplar Bluff. They purchased it in 1964 and previous to this action sold several tracts of less than one acre for residential building sites, leaving 20.59 acres of land. The land was not subdivided. The parties and their expert witnesses agreed that the best use of the property was "rural residential development". Plaintiff took 6.55 acres of the land. A judgment was entered in accordance with a jury verdict assessing damages at $70,000.

Plaintiff's first point contends that the trial court erred in failing to strike valuation testimony of two of defendants' expert witnesses because "their opinions were improperly based upon a hypothetical and speculative subdivision of defendants' land". On direct examination both gave their opinion on the value of the land before and after the taking. Except for their expertise and consideration of "comparable" sales, no explanation of the basis for the valuation of either witness was given on direct. On cross-examination defendants' witness, Roy Allen, was asked how did he "arrive" at his valuation of the 20.59 acres. He replied that he did so by looking at a plat of the subdivision [1] and "assuming that

you can arrive at so many lots in this subdivision." Plaintiff's counsel moved to strike his entire testimony "if he valuated it on a per lot basis, if that is what he is doing." The motion was denied. Plaintiff's counsel then inquired further:

"Q. Did you go in and figure that you could divide this 20.59 acres up here and sell is off at a cost per lot; is that what you did?

A. You would have to consider it that way because that is the best use for this property is residential."

The motion to strike was renewed and again denied. The other witness complained of, Robert Kerr, testified on cross-examination:

"Q. All right. How much per acre did you put on this property in your before value?

A. I didn't really base it on a per acre valuation, I based it on what I considered the highest and best use, being divided into segments of ground.

Q. So you in arriving at your evaluation subdivided the lots?

A. Yes, sir, that is the only way that you could properly evaluate this particular piece of land in may opinion.

\* \* \* \* \* \*

Q. Now, you are telling the Jury that on the basis of these comparable sales located down here which all front on public streets, that this land that does not have any streets or roads put into it, this land all back here is going to sell for as much as this land down here on this public road?

A. We are talking about the highest and best use and this means that you would be actually developing this as a subdivision and when it is so divided, it will have.

Q. Mr. Kerr, we are talking about the value on September 6th, 1979.

A. I realize that.

Q. And the land was not developed?

1. Defendants earlier offered in evidence an unrecorded subdivision plat prepared by a regis-
tered land surveyor. The exhibit was rejected.

A. It was not developed, that is true, but it has still got the value there because it is there to be developed and it is just a matter of doing the additions of the numbers for the improvement. The value is there.

\* \* \* \* \* \*

Q. And there would be a cost in developing that?

A. Yes, sir.

Q. Have you taken that into consideration?

A. I have."

Counsel for plaintiff moved to strike all the testimony of Kerr on the ground here presented. The trial court denied the motion. Neither expert gave any further explanation of his basis for the values given. The values each gave on direct examination were for the entire parcel, before and after the taking. No figures were given as to the value per anticipated lot.

■ The jury should determine the present value of the land, not its value at a future date with improvements. *In re Armory Site in Kansas City*, 282 S.W.2d 464, 472 (Mo.1955). Undeveloped and unplatted land suitable for residential development was condemned in *State ex rel. State Highway Commission v. Riss*, 432 S.W.2d 193 (Mo.1968). There the landowner attempted to introduce evidence that "the appropriate way to arrive at the market value is to determine the number of lots of each type which could be developed and sold before the taking, and the number that could be developed and sold after the taking." Following *Armory Site*, the court held that the offer was properly rejected. 432 S.W.2d at 198.

■ Raw land with little or no improvements or preparation for subdivision may not be valued as if the land were a subdivision; thus the "lot method" approach to valuation may not be used. 4 Nichols, Eminent Domain, § 12.3142[1][a], pp. 12–335 to 12–337 (3d ed. 1980). See also *Arkansas State Highway Commission v. Allen*, 253 Ark. 46, 484 S.W.2d 331, 332 (1972); *Arkansas State Highway Commission v. Watkins*, 229 Ark. 27, 313 S.W.2d 86 (1958).

■ The entire tract may not have a fair market value equal to the total that each lot would later sell for individually. In that instance a buyer would not pay an amount equal to the sum that lots would sell for in the future. He would allow for the time when the sale would occur, expenses and profit. If the appraisers computed the present value solely by determining the number of lots and multiplied that number by the lots' contemplated selling price in the future, it would be erroneous even if the development expenses and other selling expenses were deducted. However, the property's capability or adaptability to a residential use may be considered as an element of its value. *State ex rel. Kansas City Power & Light Co. v. Salmark Home Builders, Inc.*, 375 S.W.2d 92, 99 (Mo.1964). The accepted rule for the valuation of unimproved land is to consider the land in its present condition as a whole with consideration given to enhancement in value due to the property's adaptability to subdivision development. 4 Nichols, Eminent Domain, § 12.3142[1][a], p. 12–356 (3d ed. 1980).

■ One of plaintiff's appraisers testified that in determining the present value you had to consider that the property would be subdivided. He said that among the basic considerations to use in determining its value were the cost of development and that the lots would not all be sold at once. We cannot say that defendants' experts did not consider the same factors and perhaps others. Determining how many lots could be developed from the land would be a proper consideration but the land's value could not be figured solely by totaling the lots, multiplying it by the sale price per lot, and then deducting the expenses. There was no clear evidence that this was how the appraisals were made and we cannot say from their testimony that the values were determined by this method without other considerations. The appraisers did determine the available lots and considered their value but it was not established that they stopped there and used that as a present value.

Allen said you "would have to consider it that way" not that this was his sole basis of determining value. Kerr, "in arriving" at his evaluation subdivided the lots. That alone was not improper. The trial judge apparently did not believe that their testimony established that an improper method of valuation was used. Following one of plaintiff's motions to strike "on the basis that he divided this up and based his value on cost per lots", the judge commented, "We must have heard his testimony different." Both witnesses were qualified as experts and we do not believe that the record clearly establishes that they used an improper method of valuation. Point one is denied.

Plaintiff's second point contends that a portion of defendants' counsel's closing argument was "misleading". In the argument counsel referred to "the wide discrepancy" in the values given by plaintiff's appraisers. Defendants' attorney stated that one of plaintiff's experts valued the 20.59 acres approximately the same as defendants' experts did and if you took that before value and the value afterwards given by plaintiff's last appraiser, you come up with more damage than that stated by defendants' experts. Counsel said, "I may be mixing apples and oranges, but I want you to consider this in just showing the wide range. I don't think they know what they are talking about." Counsel did not ask for the difference between the highest value before the taking and the lowest value after the taking stated by plaintiff's witnesses. Shortly after making these comments he closed his argument by asking the jury to give a verdict based on the highest figure that was presented by an individual appraiser. We believe counsel's argument was proper in questioning the competency and credibility of the plaintiff's expert witnesses. Point two is denied.

The judgment is affirmed.

BILLINGS, P.J., and HOGAN and TITUS, JJ., concur.