CITY OF LEE'S SUMMIT, Appellant,

v.

R AND R EQUITIES, LLC, BC National Bank, Christine Schlomann, Southern Union Company, Jackson County, Community Bank of Pettis County, Stanley B. Cox, Utilicorp United, Inc., and Michael Pendergast, Defendants,

and

Carl Huff and Althea Huff, Respondents.

No. WD 61206.

Missouri Court of Appeals, Western District.

April 29, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2003.

Application for Transfer Denied Aug. 26, 2003.

Douglas Ghertner, Kansas City, for Appellant.

Sherwin Epstein, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

This case arises from Lee's Summit's condemnation of property owned by Carl and Althea Huff. The city appeals from the circuit court's judgment awarding $600,000 to the Huffs after a jury trial. We find error in certain opinion evidence that the circuit court admitted. Because this error resulted in substantial and glaring injustice, we reverse the circuit court's judgment and remand for a new trial.

The Huffs' property was approximately 25 acres of vacant, unimproved land with 890 feet of frontage on Ward Road in

Lee's Summit. Because the city wanted to widen Ward Road, it determined that it needed approximately 4.4 acres of the Huffs' property.

At trial, the Huffs presented the testimony of Larry Witt, a state certified real estate appraiser, who offered his opinion of the fair market value before and after the taking. The city objected to Witt's testimony on the ground that Witt, in setting the value, considered sales that were not comparable, used improper appraisal methods, and considered non-compensable items of damage in arriving at his opinions.

Witt testified that, before the taking by Lee's Summit, the highest and best use of the Huffs' property was multi-use or mixed-use development, including high density and low density residential with an emphasis on commercial development. He opined that the property's highest and best use changed after the taking to low density residential. This, he testified, was because of the tract's inadequate access for commercial use and the loss of visibility and exposure. The lack of visibility and exposure resulted from the United States Army Corps of Engineers' requiring a buffer zone of vegetation and trees to mitigate the impact that the road's improvement would have on a stream and wetlands on the Huff property. He also opined concerning fair market value before and after the taking. Using the comparable sales approach to valuation, he analyzed 12 other property sales, ranging from low density to pure commercial tracts. He believed that his sample was appropriate because the Huffs' property "fell somewhere in between" given the "mix of uses that are available on the site for development." From these 12 sales, he said that he distilled them down to three to focus on for the jury in explaining how he arrived at his opinion.

■ In reviewing the circuit court's decision to admit Witt's opinions, we accord to the circuit court "considerable discretion," as the Supreme Court termed it in *State ex rel. State Highway Commission v. Klipsch,* 392 S.W.2d 287, 289 (Mo. 1965). This means that we will decline from disturbing the circuit court's decision unless we discern that the ruling was clearly against the logic of the circumstances or was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State ex rel. Missouri Highway and Transportation Commission v. McDonald's Corporation,* 872 S.W.2d 108, 113 (Mo.App.1994). A ruling is not an abuse of discretion if reasonable persons could differ concerning its propriety. *Id.* Even an erroneous ruling is not the basis for reversing a judgment in a condemnation case unless the ruling resulted in substantial and glaring injustice. *State ex rel. Missouri Highway and Transportation Commission v. Sisk,* 954 S.W.2d 503, 509 (Mo.App.1997).

In its first point, the city asserts that the circuit court erred in overruling its objection to Witt's testimony concerning the value of the Huffs' property because the testimony was erroneous and prejudicial. The city contends that Witt's testimony was erroneous because he used the sale of improved property to compare with the Huffs' unimproved property, and, because he justified that use by opining that the improvements on the improved property did not add to the land's value, he used improper opinion-on-opinion evidence.

■ Basing an opinion of unimproved property's value on a comparison with the sale of improved property is neither absolutely right nor absolutely wrong. Because no two properties are exactly alike, using a sale of improved, but otherwise comparable, property to determine the val-

ue of unimproved property is permissible so long as, as a matter of law, the properties are sufficiently similar that the sale assists the jury in determining the condemned property's fair market value. *City of St. Louis v. Vasquez,* 341 S.W.2d 839, 850–51 (Mo.1960); *State ex rel. State Highway Commission v. Galeener,* 402 S.W.2d 336, 341–42 (Mo.1966). The degree of similarity is the determining factor. "The question becomes how improved must the sale [of the improved property] be to warrant its exclusion." 7A NICHOLS ON EMINENT DOMAIN § 9A.04[2][a] (3d ed.2002). If the properties are sufficiently similar, any differences between them go to weight rather than to admissibility. *State ex rel. State Highway Commission v. Koberna,* 396 S.W.2d 654, 662 (Mo.1965).

■ The first comparable sale that Witt used involved a wholly commercial 6.9–acre tract, immediately south of the Huffs' property, that was improved with a church facility. Church members purchased the land and building after using the facility for some time under a lease. Witt testified that the property had recently sold for $4.74 a square foot. Although the land was improved with a church building and parking lot, he testified that the improvement did not contribute to the property's value. It was, he concluded, "actually a land sale." He reached this conclusion because the church originally had wanted to buy only the 90,000 square foot portion of land on which the building was erected for $380,000. Because that price for the improved portion of the tract was less than the $4.74 a square foot that the church ultimately paid for the whole tract, including the unimproved portion, Witt concluded that the improvements added nothing to the sale price.

The second comparable sale involved an 80–acre tract, immediately north of the Huffs' property, that was approximately 80 percent low-density residential, 15 percent high-density residential, and 4 percent commercial. That land had recently sold for 42–cents per square foot.

The third comparable sale was a 26–acre tract approximately 5½ miles north of the Huffs' property that was wholly high-density residential. It had recently sold for $1.32 a square foot.

Witt told the jury that the third comparable was the most similar to the Huffs' property. He said that he adjusted its $1.32 a square foot sale price to $1.45 because the Huffs' property was more suitable for commercial development than the comparable sale was. He opined that the difference was about 10 percent in favor of the Huffs' property. He concluded that the fair market value of the Huffs' property before the taking was $1.45 a square foot.

He buttressed this conclusion with the sales of the other two comparable properties. Concerning the first comparable, the church property that sold for $4.74 a square foot, Witt noted that the sale had occurred approximately two years after the taking of the Huffs' property. Because property values had risen during that time, he decreased the sale 47 percent to $2.50 a square foot. We presume, although he did not say so, that he cut the comparable price by 47 percent because he believed that property values had risen 94 percent during the two years. He then turned to the second comparable, the 80–acre unimproved tract that sold for 42–cents a square foot. He reasoned, "In the overall scheme of things, looking at where [the Huffs'] property sits, both in development potential, size and location, [it] ought to fall right about in the center of those two indications. So halfway between 42–cents and $2.50 a square foot is right about $1.45." Obviously, the church property

sale played a very significant role in Witt's calculation.

The church property was not a proper comparable sale. It was markedly dissimilar in character from the Huffs' property. The comparable property was not property improved only with an old, rundown farmhouse and ram shackled barn. It had been improved with a large church facility and parking lot suitable to the congregation's needs. It was improved to the point that using it to compare with unimproved land was improper.

The Huffs argue that the comparison was proper because Witt used the "land extraction method" in comparing the tracts. Witt explained at trial why he believed that the church property, though improved, was a comparable sale:

> [D]espite the fact that there is a church building on the property, the property was sold for its land value, and there's an easy way to calculate that.
>
> ... The church, as you can tell, occupies just [the south] portion of the land. That's about 90,000 square feet of the land. At the time of the sale the church felt that their church was worth about $380,000, and that's true.
>
> Q. You're talking about the building?
>
> A. The building and the site. You know, to use it as a church they felt it was worth about $380,000. To them it was. But there's a problem. $380,000 for that portion of the land, which contained about 90,000 square feet of the total area. So the area being used for the church took up about 90,000 of the whole 300,000 that was there. So if you divide that $380,000 by the 90,000 square feet that the church sat on, that's $4.20 a square foot. The site sold for $4.74 a square foot.
>
> So in essence the land under the church was worth more than the buildings themselves. And you often see

this. It's called a change in highest and best use.

> Churches can go in any area. They can go in residential neighborhoods[;] they can go just anywhere that they would like to go. And the problem is that if they go on a heavy commercial traffic corridor, the buildings usually wind up being less than the land.
>
> So in this case[,] by the time that sale transferred ..., the underlying land value exceeded the value of the improvements. So it was actually a land sale. Because the improvements just didn't contribute any more. Now subsequently they put a lot of work into the church to fix it back up and get it worth more money, but at the time of the transfer it was worth land value. It's like buying an old house that needs a lot of renovation[;] you're buying the lot.

The courts seem to have rejected this type of analysis. The courts have ruled that a witness certainly can point out similarities and differences between a comparable property and the subject property, but his testifying about what portion of the comparable property's sale price should be allocated among its components, including improvements, is improper, particularly if based on his opinion rather than fact. *Klipsch*, 392 S.W.2d at 290–92; *State ex rel. Missouri Highway and Transportation Commission v. Roberts*, 926 S.W.2d 18, 22 (Mo.App.1996); *State ex rel. Missouri Highway and Transportation Commission v. Menley*, 778 S.W.2d 9, 11 (Mo. App.1989). Even if the church property and the Huffs' property were comparable, Witt's stating his opinion about the value of the church property's improvements was improper.

The Huffs vigorously contend that Witt did not express an opinion as to value of the improvements on the church property,

but the argument is not persuasive. On one hand, they argue, "The City's allegations that Witt deducted his opinion of the value of the church improvements and derived a value of the church improvements and derived a value for the vacant ground are unfounded. There is no proof that he did that." Yet, on the other hand, they argue, "[T]here was no comparison of improved property with unimproved property.... [T]he improvements had no value because the land was worth more, which made it a land sale." These arguments are contradictory. If in applying his land extraction method Witt determined that the improvements were valueless, he necessarily derived a value for the improvements separate from the land. Witt said, "[T]he land under the church was worth more than the buildings themselves." He added, "[T]he underlying land value exceeded the value of the improvements. So it was actually a land sale [b]ecause the improvements just didn't contribute any more." Quite clearly, Witt's opinion was that none of the sale price was allocated for the improvements and that it was sold as an unimproved lot.

We are concerned not as much with Witt's testimony as we are with its being based on his opinion as to the value of the improvements. We do not question that the whole property ultimately sold for more money per square foot than the church was willing to pay for the improved portion alone, but this does not establish that the improvements were, in fact, valueless. That the whole property sold for a higher sum per square foot than would have the improved portion alone could just as well indicate that improved properties with available land are worth more than those without available land, or that the

land as a whole was more valuable because it included a corner lot fronting Ward Road.

The circuit court erred in admitting this evidence. It was an abuse of discretion that resulted in a substantial and glaring injustice. The significance of the church property's value to Witt's value was apparent in his use of it to bolster his opinion that the Huffs' property was worth $1.45 a square foot. That the jury would have awarded $600,000 to the Huffs but for Witt's improper evidence is highly improbable. Without the church sale, for example, the only other comparable that bolstered his opinion that the property was worth $1.45 a square foot was property that had sold for 42–cents a square foot. Obviously, the improper use of the church as a comparable sale, both by itself and to adjust the 42–cent comparable sale, played a very significant role in Witt's calculation. This level of use of improper evidence undermines the Huffs' contention that the error in its admission was harmless. *See State ex rel. State Highway Commission v. Scott,* 544 S.W.2d 340, 343–45 (Mo.App. 1976). The improper evidence was prejudicial and constituted reversible error.[1]

The city next contends that the circuit court erred in overruling its objections to testimony regarding loss of visibility because it was not a compensable element of damages nor should the jury have considered it as a factor contributing to a diminution in market value. Because this is an issue that will surely arise on retrial, we address it.

■ Loss of visibility to a property's passers-by is not itself a compensable item of damage in a condemnation action. This is because such a claim is inextricably re-

1. Having reached this conclusion, we need not address the city's point that the circuit court erred in admitting Witt's opinion be-

cause he used sale of the church property as a comparable when it was not an arm's-length transaction or voluntary sale.

lated to a non-existent property right in traffic. *Kansas City v. Berkshire Lumber Company*, 393 S.W.2d 470, 474 (Mo.1965). Nonetheless, this does not mean that it is of no significance in a condemnation action.

In *State ex rel. State Highway Commission v. Galeener*, 402 S.W.2d 336 (Mo. 1966), the state exercised its police power to construct a four lane highway across a property owner's land. The state claimed that the circuit court erred in admitting evidence concerning traffic hazards that might result from the highway. The *Galeener* court responded, "It may be said ... that noise and speed, increased traffic and their resulting inconveniences are neither elements of damages nor of benefits and they are not proper matters of proof or for the jury's consideration.... But, ... it may with other factors affect future use and therefore market value[.]" *Id.* at 340.

Following *Galeener*, this court's eastern district held that the mention of elements that are not separately compensable, including lost visibility, is permissible when they bear on the condemned property's highest and best use. *State ex rel. Missouri Highway and Transportation Commission v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 485–86 (Mo.App.1992); *Forty Mill Realty Venture v. State ex rel. Missouri Highway and Transportation Department* [sic], 872 S.W.2d 528, 530 (Mo. App.1994).

■ Visibility is not a protected property right that is a separately compensable item of damage in a condemnation action. Evidence of lost visibility is proper because of its bearing on the condemned land's highest and best use. *Forty Mill Realty Venture*, 872 S.W.2d at 530; *see also State ex rel. Missouri Highway and Transportation Commission v. Mosley*, 697 S.W.2d 247, 248 (Mo.App.1985) ("Where a partial taking is effected by condemnation, any element of damage which results in a diminution of fair market value of the remainder of the area is a fact which must be considered.").[2] It is not proper as a compensable item of damage.

■ The Huffs did not present their evidence concerning lost visibility as a separately compensable item of damage. None of the witnesses assigned a value to the lost visibility nor were they asked to do so. Rather, they presented it to explain how lost visibility had caused a change in the highest and best use of the property. The circuit court noted that loss of visibility was not an issue of damages and that it was admitting evidence of lost visibility because it affected the property's future use. The evidence was offered for a proper purpose. The circuit court did not err in admitting it.[3]

■ The city next complains of another matter related to the issue of lost visibility evidence. We consider it because it also is an issue that will arise on retrial. The city contends that the circuit court erred in overruling its objection to testimony that the Huffs suffered a loss of access to their property. The evidence was that, al-

---

**2.** In *State ex rel. Mo. Highway and Transp. Comm'n v. Dooley*, 738 S.W.2d 457, 469 (Mo. App.1987), this court's eastern district distinguished its opinion in Mosley by stating that it did not entitle the appellant to compensation based on a loss of visibility. As evidenced by more recent cases, Dooley has not been followed as prohibiting consideration of lost visibility for all purposes.

**3.** Because we reach this conclusion, we need not address the city's further contention that the circuit court erred by not instructing the jury not to consider loss of visual access and visibility.

though the Huffs had a 60–foot easement reserved to them, it was inadequate to support the commercial use to which the property was suited before the taking.

 Loss resulting from the state's power to control access points to the highways, so long as access is at least provided, is not typically an item of compensable damage. *State ex rel. State Highway Commission v. Meier,* 388 S.W.2d 855, 857 (Mo. banc 1965); *State ex rel. State Highway Commission v. Brockfeld,* 388 S.W.2d 862, 864 (Mo. banc), *cert. denied sub nom.,* 382 U.S. 846, 86 S.Ct. 79, 15 L.Ed.2d 86 (1965). Nevertheless, we have already noted that those matters typically not compensable themselves may be considered where they may affect the use to which the property can be put and, therefore, its market value. *Galeener,* 402 S.W.2d at 340. Thus, although evidence of loss resulting from the state's power to control access to its roads may not be admitted for the purpose of claiming a compensable item of damage, it may be admitted for the ultimate purpose of establishing fair market value and determining just compensation. *See State ex rel. State Highway Commission v. Nickerson,* 578 S.W.2d 916, 919 (Mo. banc 1979). As was stated in *State ex rel. Missouri Highway and Transportation Commission v. Wallach,* 845 S.W.2d 703, 705 (Mo.App.1993):

> It would appear logical that where such factors as change of traffic, noise, or similar items have changed the value of property by making it less usable or unusable for its highest and best use that those factors should be considered in determining the extent of the landowner's damages. The jury in a partial taking case is entitled to hear evidence of matters which determine the market-

ability of the remaining property including loss of some access, circuity of travel and inconvenience in utilizing access to the property.

*See also State ex rel. Missouri Highway and Transportation Commission v. Horine,* 776 S.W.2d 6, 10–12 (Mo. banc 1989) (landowner is entitled to consequential damages caused by partial taking and any factor having a present, quantifiable effect on fair market value is properly considered).

The Huffs presented evidence that the city, after taking the portion of their property that fronted the existing road, reserved a 60 foot wide easement for the Huffs for their access to their property. They also produced evidence that the access was insufficient for commercial use, which was their land's highest and best use before the taking. No witness assigned a value to the access, and the Huffs did not claim that they were entitled to compensation for the insufficient access. Rather, as was true of the visibility issue, they presented evidence that established that the taking had unfavorably changed their property's highest and best use. The circuit court properly admitted the evidence for that purpose.[4]

 In its final point, the city contends that the circuit court erred in allowing Witt to state his opinion concerning fair market value because it was based on the "lot method." The city notes Witt's component analysis in which he parceled the Huffs' property into segments of 45 percent commercial, 25 percent high density residential, and 30 percent low density residential and assigned each a separate dollar value and added the fair market value

---

4. Having reached this conclusion, we need not address the city's further contention that it was entitled to withdrawal instructions telling the jury not to consider the issue of lost access in awarding damages.

of each to reach a total value for the property.

The point is meritless. The city is correct that the "lot method" is not a proper method of appraisal because assuming that an entire tract has a fair market value equal to the sum of its parts is incorrect. *State ex rel. State Highway Commission v. Williamsville Stone Company, Inc.*, 622 S.W.2d 407, 409 (Mo.App.1981). Witt testified, however, that he prepared his component analysis as nothing more than a mathematical exercise and only after having reached his opinion as to fair market value. He did not include it in his report, he said, or use it in formulating his opinion. Cross-examination by the city failed to show otherwise and seemed to confirm that Witt did not rely on his component analysis.

Because the circuit court abused its discretion in admitting evidence of the church property sale as a comparable sale and in allowing Witt to allocate a value to the improvements on that property separate from the land and because that error resulted in a substantial and glaring injustice, we reverse the circuit court's judgment and remand the case to the circuit court for retrial.

RONALD R. HOLLIGER, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.