ARKANSAS STATE HIGHWAY COMMISSION V.
RUSSELL C. ROBERTS ET UX

5-4934                                       441 S.W. 2d 808

Opinion Delivered June 9, 1969

*Thomas B. Keys* and *Kenneth R. Brock* for appellant.

*Guy H. Jones* and *Clark, Clark & Clark* for appellees.

GEORGE ROSE SMITH, Justice.   This is a condemnation case by which the highway department is taking, as a right-of-way and interchange for Interstate 40, a 9.63 acre tract in Conway, owned by Circuit Judge Roberts and his wife.   No severance damages are involved, the taking being total.   Four expert witnesses and Judge Roberts himself testified.   For the landowners, the witness Barnes valued the land at $108,000, the witness Pearce at $105,750, and Judge Roberts at $129,750.   For the commission the witness Adams valued the land at $27,000, and the witness Lieblong at $24,200.   The verdict was for $125,000.   For reversal the commission questions the admissibility and substantiality of the landowners' evidence.

Some description of the property and its location is essential to an understanding of the case.   On the date of the taking, June 6, 1966, the Roberts tract, approximately square, lay about a mile north of the Conway central business district.   The tract was bounded on the south by U. S. Highway 65.   At the back of the property, away from the highway, it sloped upward steeply to a ridge 60 feet higher than the front of the tract. The improvements consisted of a four-room house, a barn, and three stock ponds, but no witness attributed any value to the improvements in arriving at an estimate of just compensation for the land.

U. S. Highways 64 and 65 are of critical importance throughout all the testimony.   The two routes run northward together from downtown Conway to a point about a quarter of a mile southwest of the Roberts tract.   At

that point there is a "Y" by which No. 65 diverges in an easterly direction and No. 64 diverges in a westerly direction.

At the beginning of the trial the landowners were allowed to introduce two composite aerial photographs showing the land in its setting with relation to the city and the two highways. Counsel for the commission had no objection to the photographs, but they did object, unsuccessfully, to the introduction of a plastic overlay for each picture, showing the proposed location of Interstate 40 after its construction. The overlays were readily separable from the photographs and should have been excluded. They had no possible relevancy to the value of the land on the date of the taking and could only divert the jury's attention to the higher values that might be expected to flow from the construction of the interstate route. Needless to say, one who offers evidence has the burden of showing its admissibility. Wigmore, Evidence, § 18 (3d ed., 1940). Even in their briefs in this court counsel for the landowners have offered no sound basis for the introduction of the overlays, their argument being in effect that the evidence was not prejudicial. The error, however, must be considered to have been prejudicial unless the absence of prejudice is shown. *Equitable Discount Corp.* v. *Trotter*, 223 Ark. 270, 344 S.W. 2d 334 (1961). In view of the size of the award—which was the only issue for the jury—it certainly cannot be said that the absence of prejudice affirmatively appears.

The main issue, however, is the substantiality of the landowners' testimony. That issue is singularly uncomplicated in this case, because all the witnesses used only one method of evaluation—that of comparable sales —in reaching their conclusions. Nichols points out that the four factors generally considered in the determination of market value are sales, cost, income, and use. Nichols, Eminent Domain, § 12.1 (3d ed., 1962). We have considered all four factors in cases too numerous

to mention. Comparable sales, cost (or reproduction cost) less depreciation, and capitalization of income are *methods* of evaluation recognized universally by the authorities. See especially *Sill Corp.* v. *United States,* 10th Cir., 343 F. 2d 411 (1965). The highest and best use of the property is an added element of value that in many instances is not inherent in the method of evaluation being used and that may therefore be considered along with it.

In the case at bar the improvements on the tract were of such relatively slight value and presumably were rented for so little that no witness used either the method of cost less depreciation or the method of capitalization of income. Barnes, testifying for the landowners, mentioned a number of nebulous considerations such as the proposed development of the Arkansas River, the rate of population increase, and similar matters that obviously would be reflected in comparable sales and in the year-to-year tendency toward rising prices that was also brought out by the testimony. Neither Barnes nor any other witness assigned definite weight to such vague considerations.

Thus the substantiality of the landowners' evidence rests, when objectively considered, on the comparability of the sales upon which they relied for their conclusions. In the study of that vital issue two points must be kept in mind:

First, a sale must be comparable even to be admissible in evidence. *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S.W. 2d 30 (1958). We described comparability in this paragraph in *Ark. State Highway Commn.* v. *Witkowski,* 236 Ark. 66, 364 S.W. 2d 309 (1963):

> There can be no fixed definition of similarity or comparability. Similarity does not mean identical, however it does require some reasonable re-

semblance. See Nichols, Eminent Domain, Vol. 5 § 21.31, p. 439. There are certain criteria of similarity which can be utilized to establish a reasonable resemblance. Important factors of similarity to be considered are location, size and sale price; conditions surrounding the sale of the property, such as the date and character of the sale; business and residential advantages or disadvantages; unimproved, improved or developed land. None or any combination of these criteria were sufficiently shown, "connected up" or "tied in" as between the Caldwell and Witkowski tracts to establish a reasonable resemblance. In the case at bar the jury could only speculate in applying the evidence in question to the market value of the subject property.

Secondly, although an expert witness may state his opinion on direct examination without first detailing the facts on which it is based, his testimony is not substantial evidence if he is unable to give a sound and reasonable factual basis for his conclusions. *Ark. State Highway Commn. v. Johns,* 236 Ark. 585, 367 S.W. 2d 436 (1963). With those points in mind we turn to the evidence in the case at bar.

Barnes, the first witness called, gave the most comprehensive testimony for the landowners. He described the land as having a 660-foot frontage on Highway 65 and about an equal depth. The tract was zoned for commercial use to a depth of 200 feet from the highway with the rest being zoned for residential use. In valuing the entire tract at $108,000, Barnes valued the commercial strip at $100 a front foot, making a total of $66,000, and the rest at 15 cents a square foot, or $42,000 in round numbers. Converting his figures to acreage, Barnes stated that he valued the commercial strip at $21,780 an acre and the rest at $6,534 an acre.

On cross examination Barnes explained that he had checked about 250 sales and selected those that he thought to be comparable to the Roberts tract. It ap-

pears from the record that five of the sales were outlined on a blackboard and referred to repeatedly by the landowners' expert witnesses. Those five sales, as nearly as can be determined from a study of the record, were as follows:

| Identification of Sale | Price per Acre | Price per Front Foot |
|---|---|---|
| Covington to Bell | $ 8,000 | $ 78.50 |
| Bailey to Lynch | 16,370 | 90.00 |
| Lieblong to Clawson | 7,000 | 83.33 |
| Tyler to Leonard | 13,333 | 130.00 |
| Watering to Starkey | 14,800 | 93.50 |

An analysis of the record demonstrates beyond question that the sales relied upon did not involve properties comparable to the Roberts land. The first sale—the only one involving land on Highway 65—must be laid aside quickly. The testimony shows without contradiction that the purchaser, Bell, bought it as a speculation in the expectation that the interstate highway would be located nearby. That speculation proved to be correct. A Holiday Inn was eventually built on the parcel. The public, however, cannot be compelled to pay prices based either upon speculation or upon a value that accrues by reason of the improvement for which the land is being taken. *Ark. State Highway Commn.* v. *Watkins*, 229 Ark. 27, 313 S.W. 2d 86 (1958); *Ark. State Highway Commn.* v. *Griffin*, 241 Ark. 1033, 411 S.W. 2d 495 (1967).

The other four sales may be considered together. All four parcels were on Highway 64—not Highway 65—at or near the "Y" They were in a small area that had already been developed to commercial use. Each tract, at the time of its sale, was the site of a going business occupying a building whose value had to be estimated and subtracted from the purchase price in the determination of the value of the land alone. The traffic count on Highway 64 was about double that on 65.

1222

By contrast, the Roberts property fronted on High-way 65. That area had not been developed commercially. Quite the opposite, there is no contradiction of the commission's testimony that only 18% of the property in that vicinity had been developed commercially; that the other 82% was either vacant or devoted to residential use only; and that there had never been "any business out 65 that didn't go broke or quit."

Barnes made an adroit effort to harmonize the discordant facts by saying that owing to the higher traffic count the other tracts would be more valuable for a "traffic oriented commercial use," but the Roberts property would be better for a commercial use that "wanted to avoid traffic congestion." The inherent contradiction is too plain to be overlooked. Barnes used the "traffic oriented" parcels to establish a front foot value, which he then applied to the Roberts tract. But obviously front footage on the highway derives its primary importance from the tract's attractiveness to businesses that are dependent upon the heavy flow of traffic. Comparability at once disappears when that essential similarity is wanting. Moreover, in arriving at his front-foot figures Barnes entirely disregarded the depth of the property. For instance, the Lieblong property was described as being 600 feet deep, but Barnes made no allowance for that fact in comparing it to the commercially zoned strip of the Roberts land, only 200 feet deep. It is manifest that on a front-foot basis a lot 600 feet deep is not fairly comparable to one 200 feet deep.

Barnes valued the back part of the Roberts tract as a potential site for apartment houses and other multi-family uses. His testimony was, to say the least, conjectural. There was no showing of any active demand for apartment houses in the neighborhood. None had been built, nor had any property been bought or sold for that purpose. There were such structures in other parts of Conway, but the witness did not have definite information about them. In fact, he ultimately admitted on

cross examination that he did not have "a single sale of property in Conway comparable to [the Roberts tract] which was bought for multi-housing units." Since he was using only the comparable sale method of evaluating the property, there was in reality no basis for his conclusions. His entire testimony should have been stricken on motion of the highway commission's counsel. We need not detail the testimony of the landowners' other expert witness, Pearce. He worked with Barnes in the preparation of his testimony and really added nothing to what had already been said.

Judge Roberts was the other witness for himself and his wife. He admitted with candor that he paid only $1,750 for the ten acres in 1946 and that at the time of the taking it was assessed for taxation at $1,500 (which, however, would ostensibly be only 20% of its market value. Ark. Stat. Ann. § 84-476 [Repl. 1960]). The judge differed with his expert witnesses by assigning a value of $125 a front foot to the commercial part of his land, but he stated no basis for that figure—other than mentioning a sale somewhere east of Conway which he himself said was not comparable.

We find no substantial evidence in the record to support the amount of the verdict or anything approaching that figure. At the same time, the testimony of the commission's expert witnesses is not altogether convincing. It appears that in earlier condemnation cases their testimony with respect to the same subject matter was more favorable to the landowner than that given in the case at bar. As in *Ark. State Highway Commn.* v. *Darr*, 246 Ark. 203, 437 S.W. 2d 463 (1969), we cannot with confidence arrive at a minimum sum which the landowners should in any event recover. The judgment must therefore be reversed and the cause remanded for further proceedings consistent with this opinion.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice.    I agree that this case must be reversed for the reasons stated in the majority opinion.    However, it seems to me that the flaw in the testimony of appellees and their witnesses consists of a failure of the witnesses to satisfactorily explain the extent of the effect of various factors upon market value of the land in question rather than in considering them in arriving at an opinion.

In considering this case, we do not have a question as to the admissibility of direct evidence of sales of other lands.    Instead, we are considering the opinion testimony of experts based, at least substantially, upon such sales.    Since the majority opinion states that the testimony of appellees and their witnesses should have been stricken on motion of appellant (a point not relied upon here), it seems to me to imply that upon retrial their opinions cannot be substantial evidence.    It is my opinion that they would have been substantial evidence if the witnesses had given a satisfactory explanation of the effect of the various factors considered by them and of the adjustments made in evaluation of the sales considered by them as pertinent to market value.

Nichols' "The Law of Eminent Domain" is perhaps the leading authority on this subject.    In treating the determination of market value, this authority states that the following are to be considered, among other things (4 Nichols on Eminent Domain 84, § 12.31 [2]):

(a)    A view of the premises and their surroundings.

(b)    A description of the physical characteristics of the property and its situation in relation to the points of importance in the neighborhood.

(c)    The price at which the land was bought, if sufficiently recent to throw light on present value.

(d)    The price at which similar neighboring land has sold at or about the time of the taking.

This test, so conclusive in the case of articles of personal property commonly bought and sold, is so much less valuable in the case of real estate that in some jurisdictions it is rejected altogether, but it is generally considered that it should be used for what it is worth.

(e) The opinion of competent experts.

(f) A consideration of the uses for which the land is adapted and for which it is available.

It is to be noted that sales of neighboring lands and opinions of experts are two separate and distinct factors. We have said that the determination of the value of lands taken by eminent domain is largely a matter of the opinion of the witnesses who are familiar with the lands and the use for which they are best suited, having such weight only as the jury may be convinced they should have by the reasons given for the respective opinions. *Southwestern Bell Telephone Co.* v. *Biddle,* 186 Ark. 294, 54 S.W. 2d 57.

This does not mean that opinions of experts without a reasonable basis can be considered    See 5 Nichols on Eminent Domain 240, § 18.42 [1]; *Arkansas State Highway Commission* v. *Stanley,* 234 Ark. 428, 353 S.W. 2d 173; *Arkansas State Highway Commission* v. *Johns,* 236 Ark. 585, 367 S.W. 2d 436.    Still, the opinion of an expert as to market value need not be based upon comparable sales alone. 5 Nichols on Eminent Domain 245, § 18.42 [1].    The question of who are competent to express opinions on the value of lands taken must be largely left to the discretion of the trial court.    *Ft. Smith & Van Buren Bridge District* v. *Scott,* 103 Ark. 405, 147 S.W. 440.    The inquiry is not confined to testimony relating to sales of similar property for like purposes, but may be determined from opinions of witnesses having knowledge of the subject and whose business or experience entitles their opinions to weight.    *Ft. Smith & Van Buren*

*Bridge District* v. *Scott,* supra. This rule was applied in the cited case in sustaining the admission of testimony by witnesses who had no knowledge of land sales or prices realized under like conditions for like purposes. Apparently these witnesses were "non-expert."

An even greater latitude is allowed expert witnesses. The difference in latitude is demonstrated by the rule which permits a witness whose qualifications and familiarity with the subject are shown, to express an opinion, without first detailing the facts upon which his opinion is based as a non-expert witness would be required to do. *Arkansas State Highway Commission* v. *Johns,* 236 Ark. 585, 367 S.W. 2d 436. *Arkansas State Highway Commission* v. *Dixon,* 246 Ark. 756, 439 S.W. 2d 912. We have said that in considering testimony based on comparable sales reasonable latitude must be allowed in evaluating sales and adjusting or compensating for differences in similar lands. *Arkansas State Highway Commission* v. *Sargent,* 241 Ark. 783, 410 S.W. 2d 381; *Arkansas State Highway Commission* v. *Duff,* 246 Ark. 922, 440 S.W. 2d 563.

In this connection, the following statement from Nichols' text is pertinent (Vol. 5, p. 253, § 18.42 [1]):

"A distinction must also be drawn relative to the foundation which must be laid for such evidence based upon whether the comparable sales data is used as support for an expert's opinion or as independent substantive evidence of value. Quite obviously, when evidence of the price for which similar property has been sold is offered as substantive proof of the value of the property under consideration, a foundation should be laid showing that the other property is sufficiently near that in question and that it is sufficiently like the property in question as to character, situation, usability and improvements to make it clear that the tracts are comparable in value. However, where evidence of sales of similar property is offered not as substantive

proof of value, but merely in support of, and as background for, the opinion of an expert as to the value of the land in question, the requirement of such foundation is not so strict.

Testimony of an expert can be considered though he did not base his opinion entirely on comparable transactions.

The supporting data testified to by the opinion witness must be relevant and competent although the use of hearsay, in and of itself, is not sufficient to condemn the competency of the opinion especially where the witness shows that his own knowledge and experience require agreement with such hearsay evidence. The fact that certain elements are not independently admissible in evidence, however, does not bar their consideration by an expert witness in reaching an opinion. Thus, it has been said:

'An integral part of an expert's work is to obtain all possible information, data, detail and material which will aid him in arriving at an opinion. Much of the source material will be in and of itself inadmissible evidence but this fact does not preclude him from using it in arriving at an opinion. All of the factors he has gained are weighed and given the sanction of his experience in his expressing an opinion. It is proper for the expert when called as a witness to detail the facts upon which his conclusion or opinion is based and this is true even though his opinion is based entirely on knowledge gained from inadmissible sources.' "

This principle was followed by us in holding that there was no error in refusing to strike the testimony of an expert when his knowledge of prices paid by the condemnor in the area entered into his determination of value. *Arkansas State Highway Commission* v. *Kennedy*, 234 Ark. 89, 350 S.W. 2d 526.

With the more liberal approach required in considering the basis for the testimony of an expert witness, an examination of our authorities governing sales of other lands will demonstrate that the testimony of appellees and their witnesses would not have been subject to being stricken, if adequate explanations had been given. Perhaps the leading case in Arkansas on the admissibility of the value of other lands is *St. Louis I. M. & S. R. Co.* v. *Theodore Maxfield Co.*, 94 Ark. 135, 126 S.W. 83. There, it was held that testimony relative to the value of lands similar to that taken, and of lands not similar if accompanied with explanations sufficient to show the difference between market values of such lands, is admissible by way of comparison to show the market value of the lands in question. This is the authority relied upon in *City of Little Rock* v. *Sawyer*, 228 Ark. 516, 309 S.W. 2d 30, cited in the majority opinion. In passing, it should be noted that this court in that case merely approved the ruling of the trial court in denying the condemnor the right to cross-examine condemnee's value expert about a certain sale of lands he described as being so dissimilar as to preclude a comparison. We said that there was no error in the trial court's holding that the condemnor must first develop a similarity between the properties before the question would be proper.

This court has also held that an objection to the introduction of evidence relative to the sale price of a one-acre tract purchased by appellant for a particular purpose because it was not similar in location or topography to the damaged lands was without merit. *Sewer and Water Works Imp. Dist. No. 1* v. *McClendon*, 187 Ark. 510, 60 S.W. 2d 920. There we said that "sales of other lands in the same locality is a fair criterion to aid in establishing market value." The contention that there was reversible error in admitting testimony by a landowner as to the value of his farm situated about seven miles from the lands involved was also rejected. We said:

"\* \* \* There were similarities detailed by him between his tract and appellee's land; so the testimony was admissible notwithstanding they were separated by a distance of seven miles. In these days of good roads and rapid means of transit, it cannot be said as a matter of law that the lands were in different localities. The description of the two tracts make the testimony of Everett admissible under the rule of evidence announced in the case of *St. Louis Iron Mountain & Southern Railway Company* v. *Maxfield,* 94 Ark. 135, 126 S.W. 83, 26 L. R. A. (N.S.) 1111."

The holdings in the cases cited above are not affected in any way by the opinion in *Arkansas State Highway Commission* v. *Witkowski,* 236 Ark. 66, 364 S.W. 2d 309. There the action of the trial court in permitting direct testimony as to a sale of property by a witness was found erroneous. The only evidence as to proximity was conjectural. There was no evidence to show a comparison or similarity between this property and the property of the condemnee.

In this case, appellant has not contended that either appellees or their witnesses are not qualified to testify. Each of them clearly qualified to express an opinion. Witnesses who are properly qualified are in much better position to know the considerations which determine market value, i.e., influence prospective buyers and sellers, than most judges, either at the trial or appellate level. Yet they should be able to give some means of evaluating the effect of such factors on values of property about which they testify. They should also be able to measure to some degree the adjustments to be made in comparing sale prices of other lands because of differences in the properties involved. For example, the location of property on a different highway where traffic is greater should not render a sale thereof improper as a basis for an expert opinion when adjustment is made for the difference.

1230

In evaluating the testimony of the witness Barnes, it must be remembered that he is not only an appraiser but a real estate counselor engaged in the business of making analyses with respect to demands and needs for real estate and advising a client with respect thereto. When asked whether he considered sales in the community and neighborhood comparable to this property, he stated that there were no sales comparable to this property. He added that he used sales that had been made and compared the factors that went to make up the value of that property with the factors which affected the value of the Roberts property. This is in keeping with rules governing such testimony. Yet I agree that the witness failed to adequately explain the effect of any particular factor. Specifically, he failed to adequately explain a front foot value for commercial property higher than that given for property which would seem to command a higher price. The differences pointed out in the majority opinion as to the four sales treated there together, unexplained, would render the basis insubstantial. I do not think then we can say, as a matter of law, that they could not be considered if an evaluation of similarities and differences is given. They could have a very real effect on prospective buyers and sellers of property like that of appellees. According to appellant's witness Adams the first sale considered by him was the sale by Lieblong to Clawson, one of the sales held to be dissimilar in the majority opinion. Mr. Lieblong, appellant's other value witness and the seller in that sale, also considered it. I cannot help asking whether the court is saying that the witnesses for neither party can consider this sale on retrial.

Furthermore, I do not think we can rule out the sale by Covington to Bell as speculative as a matter of law. Although Barnes answered a question as to whether the purchaser was speculating as to the location for a Holiday Inn site in the affirmative, he stated that Bell was hopeful that he would be located near enough to the interstate facility "to work something out" but did not

feel that he paid any increment for the land on account of that speculation. Barnes also stated that the site was suitable for a Holiday Inn whether the interstate highway was built or not. That this sale should not be discarded as speculative is best demonstrated by its use by appellees' expert witness Adams in considering the market value of the condemned property.

I cannot agree that the testimony as to the highest and best use of part of the property for multifamily housing is necessarily conjectural. Barnes investigated rental housing in Conway and found an insufficiency of both single and multifamily units available. The zoning ordinances permitted this use of the property. Barnes did not think that other properties which could be used for that purpose were as well located with reference to community facilities, the Arkansas Children's Colony or Hendrix College. The advantage of the view of the community from the high elevation was pointed out by the owners and by Barnes. Both Barnes and Pearce testified that this was its highest and best use. The fact that such developments have not been made in the immediate vicinity would go only to the weight to be given to the testimony. Someone always has to have the first such development in an area, but the fact that such development is the first does not eliminate the adaptability and availability of the property for that use. The experts simply disagreed on the highest and best use.

It seems to me that the majority has weighed the evidence while considering its substantiality.