## ARKANSAS STATE HIGHWAY COMMISSION
## *V.* FIRST PYRAMID LIFE INSURANCE
## COMPANY OF AMERICA

80-13                                              602 S.W. 2d 609

Supreme Court of Arkansas
Opinion delivered June 23, 1980
Rehearing denied August 25, 1980

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Mitchell, Williams, Gill & Selig,* by: *John P. Gill* and *William L. Owen,* for appellee.

JOHN A. FOGLEMAN, Chief Justice. This is a second appeal from a judgment awarding compensation to appellee First Pyramid Life Insurance Company, for the taking of right-of-way for the "East Belt Freeway" in Pulaski County by appellant Arkansas State Highway Commission. On the first appeal, we reversed the judgment, because testimony was admitted to show that Wesley Adams, a real estate appraiser called by the landowner : as a witness, had been employed by the Commission to make an appraisal of the land and because of the exclusion of evidence relevant on the question whether the landowner had, at the time it paid for the land taken, been trying to extricate itself from a transaction which was sick or sham. *Arkansas State Highway Com'n.* v. *First Pyramid Life Inusrance Co.,* 265 Ark. 417, 579 S.W. 2d 587. On this appeal, appellant relies upon the following points:

I

THE TRIAL COURT ERRED IN ALLOWING CERTAIN TESTIMONY OF THE APPELLEE'S WITNESS, EDWARD G. SMITH, OVER APPELLANT'S OBJECTION.

## II

THE TRIAL COURT ERRED IN LIMITING THE CROSS-EXAMINATION OF APPELLEE'S EXPERT WITNESS, JAMES LARRISON.

## III

THE TRIAL COURT ERRED IN ITS RULING ON CERTAIN PORTIONS OF WITNESS JACK FARRIS' TESTIMONY.

## IV

THE VERDICT OF THE JURY WAS EXCESSIVE AND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

## V

THE TRIAL COURT ERRED IN NOT GIVING CERTAIN INSTRUCTIONS REQUESTED BY APPELLANT.

## VI

THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL.

We find no reversible error and affirm.

We will discuss the points stated by appellant separately in the order stated.

## I

Edward G. Smith, a consulting engineer, who also testified at the first trial, was called as appellee's first witness. He stated that land development had been a very important part of his engineering experience over the past 25 years and that his office was handling at least 200 projects in various stages of development at the time he testified. He related that

he had started in appraisals for flood control reservoirs and that his experience in development of industrial parks has extended over the preceding 25 years. He named several parks, including Galloway Industrial Park, from which the right-of-way for the freeway was taken. The obvious purpose of Smith's testimony was to prove that the highest and best use of the land was for industrial development. He described the location of roads, highways, railroads, industrial plants and other developed property in relation to a tract of some 250 acres in Galloway Industrial Park from which the right-of way was taken. He testified that he had been employed by William Rector of Rector-Phillips-Morse, a real estate firm, to evaluate this land for an industrial park prior to the time appellee purchased it. He testified, without objection by appellant, that he was asked to evaluate this land for an industrial park in terms of profitability, cost of development, source and cost of utilities and to determine whether it was profitable to develop the land as an industrial park and later to devise a plan for the development of an industrial park. Smith said that the plan had been prepared and that he had discussed it with appellee prior to appellee's purchase of the property. He also testified that he had made an estimate of the cost of developing the property many times. When asked why he had done so, Smith responded that the purpose was to evaluate the development, to see that it is a feasible development and "that it will be profitable to proceed, buy the lands. You don't buy a piece of land until you evaluate the cost and see that it is profitable." Appellant objected to the use of the word profitable on the basis that the witness was not properly qualified to testify as to the profitability of the development. The trial judge overruled the objection, saying that he understood the witness to say that he had been employed to evaluate the land for the purposes of establishing an industrial park, and to see if, in his opinion, it was feasible, and assumed that this was what the witness was talking about. No admonition or limiting or cautionary instruction was requested by appellant.

A landowner is entitled to show every advantage that his property possesses, present and prospective, to have his witnesses state any and every fact concerning the property which he would naturally adduce in order to place it in an ad-

vantageous light if he were selling it to a private individual, and to show the availability of this property for any and all purposes for which it is plainly adapted or for which it is likely to have value and induce purchases. *Arkansas State Highway Comm'n.* v. *Ormond,* 247 Ark. 867, 448 S.W. 2d 354. In order to do so, it is competent for the landowner to show by a witness, who is an engineer with special knowledge of the special advantages of the lands bearing upon its adaptability or availability for a particular purpose, the facts which show the availability of the particular tract involved for that purpose as an element of value to one who might desire to acquire it for that purpose. *Gurdon* v. *Ft. Smith R. Co.* v. *Vaught,* 97 Ark. 234, 133 S.W. 1019. Every element that can fairly enter into the question of market value and which a business man of ordinary prudence would consider before purchasing the property should be considered by the jury in arriving at the difference between the value of the property before and after the taking or damage to it. *Pulaski County* v. *Horton,* 224 Ark. 864, 276 S.W. 2d 706. The latitude allowed the parties in bringing out collateral or cumulative facts to support value estimates made by witnesses is left largely to the discretion of the presiding judge. *Little Rock Junction Railway* v. *Woodruff,* 49 Ark. 381, 5 S.W. 792, 4 Am. St. Rep. 51. It was proper to allow the introduction of evidence tending to show the highest and best use of the property, independent of, and prior to, testimony as to values of lands taken. *Arkansas State Highway Com'n.* v. *Witkowski,* 236 Ark. 66, 364 S.W. 2d 309; *Arkansas State Highway Com'n.* v. *Southern Development Corp.,* 250 Ark. 1016, 469 S.W. 2d 102; *Arkansas State Highway Com'n.* v. *Ormond,* supra. Evidence is relevant and admissible if it tends to show that the cost of making property available for a use other than that to which it was devoted is consistent with profitability. *McCandless* v. *United States,* 298 U.S. 342, 56 S. Ct. 764, 80 L. Ed. 1205 (1936).

Later in his testimony, Smith had been examined about the location of a sewer lift station. In response to a question about how the sewerage was treated, Smith said that he had been told to put the sewerage treatment plant on the property, but that he had told the developers that the plant should be located far off the "site" and not on valuable industrial land, which should not be put to sewerage treatment plant

use. That use, he said, is not a valuable use and tends to lower the value of the land around it. Appellant's objection primarily was directed to Smith's relating what he had told someone on the question of location of the plant but concluded with the remark, "If he is going into a lot of valuable land and all this argument business, I don't think it is proper." The trial judge overruled the objection, on the basis that the consulting engineer was saying why he selected the particular location for the plant. The testimony, at most, was addressed to the question of desirability of location of a sewerage treatment plant. Smith never expressed an opinion as to the monetary value of the property and this reference to the reason for the location he specified for a sewerage treatment plant was not improper.

The testimony of Smith was that of one found qualified by knowledge and experience to testify as to specialized knowledge to assist the jury to understand other evidence and to determine the facts in issue and was admissible under Ark. Stat. Ann. § 28-1001, Rule 701 (Repl. 1979).

Appellant also contends that there was reversible error in a statement by Smith that there had been prospective purchasers of tracts in the park. The witness had been testifying about the reasons utility lines had not been extended beyond the point they had been located at the time of the taking of the right-of-way and was asked on direct examination if he had anything further to say in that regard. Objection was then made that the witness was starting to talk about potential purchasers in violation of a pretrial order of the court against evidence as to offers for the purchase of real property. After this objection was overruled, appellee's attorney asked, in essence, whether the reason the utilities had not been extended was that there had not been any future development in the area not served and that one would not do that until there is a sale. Smith answered there was more than one prospect to buy and a renewed objection was overruled. Smith then said that there had been more than one prospect to buy large sites that might encompass the rest of the park, or at least the west part of it, in 100-acre tracts, one of whom was from Italy. When appellant commenced to object further, the trial judge ruled that the witness was talking

about the nature of developing utilities, not offers to buy. Appellee's attorney then withdrew the question and dropped his pursuit of the matter.

We agree with the trial court that the witness was not violating the pretrial order because he was not talking about offers to buy. He mentioned prospects only and never indicated that there had been an offer to purchase by any of them or the terms of any offer. In none of the cases cited by appellant in support of its position have we ever said that the mere fact that there have been prospects to buy lands is inadmissible, at least when the issue addressed is only the highest and best use of the property in question. Those cases are *Arkansas State Highway Com'n. v. Jackson County Gin Co.*, 237 Ark. 761, 376 S.W. 2d 553 and *Arkansas State Highway Com'n. v. McKown*, 253 Ark. 419, 486 S.W. 2d 525. They properly eliminate from consideration offers to purchase as evidence of fair market value.

## II

James Larrison testified on behalf of appellee as an expert witness on land values. He had stated that the highest and best use of the subject property was for industrial use. On cross-examination, Larrison testified that he did not know how much appellee had paid for the property in question and did not analyze the original transaction. He said that he attached no significance to the original transaction because appellee bought the land "in the raw state" for development and then expended large amounts of money to extend utilities and develop the property to its present state. Larrison stated that there had been no sales of any of the property since appellee had purchased it, that not much industrial property sold in the area, and that he had talked with Rudolph Del Donno, who was in charge of investments for appellee, about how the investment was doing. Larrison said Del Donno furnished a detailed account of the money that had been spent, what appellee had done, and the total investment of appellee as of the date of the conversation. He did not recall Del Donno discussing whether appellee was happy or unhappy with its investment. After Larrison had stated that Del Donno furnished all the factual information requested, he

was asked whether appellee still owned the property. Appellee objected on the ground that it was obvious that appellee did not, because appellant had taken it on January 4, 1978. The trial judge then ruled the question irrelevant on that point. In two prolonged in camera hearings, the purpose of the question and the basis of appellant's objection were explored extensively. The trial judge stated that he was aware of evidence in the previous trial relating to a contract between Harris Cattle Company, Rector-Phillips-Morse and appellee and of the payment of $448,000 by appellee for the land taken by appellant, but that testimony of Allen Horne, a member of the Board of Directors of appellee to the effect that appellee made the payment because the purchase money note it signed made no exception for lands taken by eminent domain had been excluded and that this court had held the exclusion to be reversible error. The judge stated that since no evidence of either the contract or the payment had been introduced and the witness had stated that, in arriving at his opinion as to values, he did not take any contract between Harris Cattle Company and appellee into consideration, the question was not relevant. Appellant's attorney stated that the purpose of the question was to determine whether the witness had any knowledge of the details of the reconveyance for the purpose of determining the fair market value of the property. It was also stated that the fact that the property was reconveyed to the seller a short time after the sale was very important in regard to the credibility of the witness. The parties then made extensive proffers of documents and records of proceedings in a chancery suit between appellee and Rector-Phillips-Morse on the one had and Harris Cattle Company on the other.[1] The proffers included a three-volume transcript of the record in that suit. These proffers showed that pursuit of the question with this witness would have led into numerous collateral matters, such as: the relation of the lands taken to the suit, which in effect was for rescission of the contract except as to those lands; the question whether reconveyance of the land by appellee to Harris Cattle Company was because

---

[1]Rector-Phillips-Morse made no appearance in this court on the first appeal, and is not a party in this appeal. The record tendered by appellant in this trial shows that any connection they might have had with the transaction between Harris Cattle Company and appellee was terminated by a settlement entered into on November 30, 1978.

of appellee's dissatisfaction with the transaction or was a settlement of that suit; whether it was a fair market transaction; and whether the taking of the property by appellant or appellant's dissatisfaction with the purchase precipitated the chancery suit. The judge ruled the particular question was not relevant at the time but said that appellant would be permitted to call Del Donno and Horne in an effort to show that the highest and best use of the property was not as appellee was representing 'it in the eminent domain proceeding. Later, both Horne and Del Donno testified.

Appellant contends that it was prejudiced by this limitation on its cross-examination of Larrison and cites such cases as *Arkansas State Highway Com'n. v. Lewis,* 258 Ark. 836, 529 S.W. 2d 142, *Arkansas State Highway Com'n. v. Pulaski Investment Co.,* 265 Ark. 584, 580 S.W. 2d 679, and *Arkansas State Highway Com'n. v. Dean,* 247 Ark. 717, 447 S.W. 2d 334, in which we have emphasized the importance of according a wide latitude in questions on cross-examination tending to impeach the credibility of a witness or to elicit matter to be considered in weighing his testimony, particularly where expert opinion evidence is involved, and held limitations in those cases to be unduly restrictive. In *Lewis,* however, we recognized that the trial court has much discretion in controlling cross-examination, so that the inquiry does not go too far afield. We find no abuse of discretion here.

### III

Appellant complains that Jack Farris, an expert witness who testified about the values of the lands on behalf of appellee, considered a sale of one acre to Twin City Band as a comparable sale. On direct examination, Farris stated that he had used this sale as a comparable sale. When asked why none of the values he put on appellee's land were $53,000 per acre, Farris explained that all his comparable sales were for more than twice the value he put on appellee's property, because it would take time and money to develop appellee's property. He then related some history of sales in the Little Rock Industrial Park, which opened in 1953, pointing out that the first sale of property there took place in 1955, and brought $1,500 per acre but a sale there during 1979 brought

$60,000 per acre. Farris stated that he did not consider the later sale in the Little Rock Industrial Park as a comparable sale.

It is clear, and should have been clear to the jury, as it was to the trial judge, that Farris did not consider the sale in the Little Rock Industrial Park as a comparable one and that he did not consider it in arriving at his opinion as to values of appellee's property. There was clearly no error in this regard.

Farris, when asked on direct examination specifically whether he considered the sale of the one-acre tract as comparable, said, "Well, not really, I was aware of it, I used it, but this took place in 1971," but when appellant's attorney asked if it was offered as a comparable, the witness said that it was offered and that "all of these sales were considered in making up my mind." The witness added that "you can adjust them for time and often it is done." A general objection by appellant was then overruled.

It is quite true that, before evidence of the consideration for a sale is admitted, it must be shown that the tract of land sold and that in question were similar. *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S.W. 2d 30. It is true that, when opinion testimony as to real estate values is based only on comparable sales, it should be stricken for want of a resonable basis when it is shown that no sale considered by the witness was of land comparable to that involved in the trial. *Arkansas State Highway Com'n.* v. *Roberts,* 246 Ark. 1216, 441 S.W. 2d 808. But the mere fact that a witness considers a sale that is not comparable, along with others, in arriving at his opinion as to value, is not a basis for excluding his testimony. *Arkansas State Highway Com'n.* v. *Person,* 258 Ark. 379, 525 S.W. 2d 77; *Arkansas State Highway Com'n.* v. *Sargent,* 241 Ark. 783, 410 S.W. 2d 381; *Arkansas State Highway Com'n.* v. *Duff,* 246 Ark. 992, 440 S.W. 2d 563. The opinion testimony of an expert witness can be considered, even though his opinion is not based entirely on comparable transactions. 5 Nichols on Eminent Domain, 253, § 18.42 [1].

## IV

The verdict of the jury fixed the compensation to

appellee at $482,400. Wesley Adams, an expert witness called by appellee testified that just compensation would amount to $483,400. The verdict in the first trial was $495,000. James Larrison's opinion was that the difference in market values before and after the taking amounted to $640,950. Jack Farris fixed the difference at $569,425. Each of these witnesses was well qualified as an expert on real estate values. In view of this testimony, we are simply not in a position to say that the verdict of the jury was excessive.

## V

Appellant complains that the trial court erred in refusing to give two jury instructions requested by it. The first was its requested instruction No. 7, which read:

> You are instructed that the defendant had a duty to minimize the damages that they might sustain by virtue of the taking by the Highway Commission, and to that end, you are instructed that if you find that certain acts could have been done, or certain agreements could have been made by the defendants that would have lessened the damages suffered by the defendants, then they are not entitled to claim those elements today, and you will disregard any element of damages claimed by these defendants for such items as they might have corrected or eliminated.

Appellant's argument that this instruction should have been given is that appellee should have taken measures to provide against the contingency of condemnation in its contract with Harris Cattle Company for purchase of the tract. It says that appellee had the responsibility of seeing that a condemnation clause was included in the instruments that would have minimized its damages in this case. This contention should probably be disposed of under the rule of *Dixon* v. *State,* 260 Ark. 857, 545 S.W. 2d 606. Appellant's argument on this point is certainly not convincing and its citation of *Arkansas State Highway Com'n.* v. *Dean,* 244 Ark. 405, 425 S.W. 2d 306 is totally inapposite. True, we held there that it was error to refuse a similar instruction. Appellant, however, has substituted the word "agreements" for the word "arrangements"

in the instruction considered in *Dean*. The similarity in the two cases is so remote as to be almost imaginary. In *Dean*, the landowners claimed damage by reason of the increased cost of extending a sewer line across the right-of-way by reason of highway construction thereon. There was evidence that the landowners could have greatly mitigated their damages by constructing a conduit for a sewer across the right-of-way after it was acquired and before actual construction was begun. There is not the slightest indication that appellee could have negotiated with the seller the kind of condemnation clause appellant envisions. And, of course, the clause would not have protected appellant from liability to some landowner. It simply would have been liable to a different one. Appellee certainly could not have had a favorable clause inserted in the contract between the taking of the right-of-way and construction of the highway, as could be done with a sewer conduit. Appellant had the burden of showing that the landowner could have mitigated its damages. *Arkansas State Highway Com'n*. v. *Frierson*, 269 Ark. 81, 598 S.W. 2d 420 (1980). It did not do so.

The other instruction requested was:

> You are instructed that in the determination of just compensation in this case, you are not to consider any damages arising as the result of any contract between the landowner and third parties, inasmuch as this is not a compensable element of damage.

Appellant bases its contention that this instruction should have been given upon the fact that evidence was introduced showing that appellee had to pay Harris Cattle Company $7,700 per acre for the lands taken by appellant because there was no provision for relief of appellee from liability to Harris Cattle Company in the event of a partial taking of the lands by the exercise of the power of eminent domain. There was a clause in the contract requiring appellee to pay Harris Cattle Company $7,700 per acre when any of the lands were sold.

In the first trial of this case, appellee showed through Mr. Del Donno that appellee had paid Harris Cattle Com-

pany the specified sum of $7,700 per acre. We said on the first appeal that it was not error to admit this evidence to show what appellee had paid for the property, but that it was error to exclude testimony by Allen Horne which might tend to show that the transaction was sick or sham. Appellant had contended in the first trial, and on appeal, that the testimony about appellee's transaction with Harris Cattle Company was not admissible in evidence. In the second trial, however, appellant introduced the deed from Harris Cattle Company to appellee dated September 6, 1973, the vendor's lien note, and the conveyance from First Pyramid Life Insurance Company to Harris Cattle Company, acknowledged July 10, 1978. After this evidence was introduced, appellee called Allen W. Horne to explain the reconveyance to Harris Cattle Company and the payment made by appellee.

Appellee did not seek to recover damages arising as the result of its contract with any "third parties." The jury was instructed that just compensation to the landowners was the fair market value of the lands condemned by the Highway Department on January 4, 1978, plus damages to the remaining lands, if any. Fair market value was defined as, "the highest purchase price the land would bring in the market in a transaction between an informed seller and an informed buyer, after they have had a reasonable time for negotiations with the seller being willing, but not forced, to sell, and the buyer being willing, but not forced, to buy."

Appellant seeks to explain its introduction of the deed from Harris Cattle Company by the fact that its cross-examination of Wesley Adams had revealed that he had used this sale as one of the comparable sales he considered in arriving at his opinion as to values. This explanation is not totally satisfactory, because a cross-examining attorney is not entitled to embark upon a fishing expedition with immunity from any unfavorable information he may elicit. *Arkansas State Highway Com'n. v. Russell,* 240 Ark. 21, 398 S.W. 2d 201. In view of appellant's introduction of the deed and the clarity of the instructions given, we find no error in the refusal of this instruction.

## VI

Appellant moved for a mistrial after appellee's attorney had, on redirect examination, referred to a question on cross-examination of the witness about 0.9 or 0.09 of an acre and the absence of any mention of such a tract on direct examination and then asked the witness to what that had reference. The witness replied that he had, by typographical error in his original report, listed a tract as containing 8.9 acres when it actually contained 8.09 acres. Appellee's attorney then had the witness again confirm that the fact there was a discrepancy of .9 or .09 acres that caused a typographical error was not stated by the witness on direct examination but that this had been brought out on cross-examination. Appellee's attorney then stated that he had never seen the appraisal made by the witness and that he wanted to look at it. Appellant's attorney objected. After looking at the appraisal report, appellee's attorney stated that it was long and asked the witness to show him the reference to the mistake in acreage. The witness pointed out that it was in the amount of the taking. After the cross-examination was concluded, appellant's attorney moved for a mistrial. He stated that it had become apparent to him that Adams had corrected an error on his computation on a tract of land taken, and he had avoided questions as to errors, but that appellee's attorney had brought out the fact there was an error in the appraisal, and implied the only way appellant's attorney could know about it was because he had advance knowledge and that the appraisal was done for appellant. Appellant's attorney also pointed out that, in his opening statement, appellee's attorney had said that Adams had been subpoenaed. In denying the motion for mistrial, the trial judge remarked that appellee's attorney did not convey to him the implication appellant's attorney saw in the redirect examination.

In arguing this point appellant also points out that appellee's attorney had asked Adams when his appraisal was made with reference to the date of taking and whether the appraisal was written. These questions were natural inquiries. Even when considered along with the redirect examination of the witness, the inference that Adams had done the appraisal for appellant seems somewhat strained. The granting or

denial of a mistrial is a matter lying within the sound judicial discretion of the trial judge and his exercise of that discretion will not be reversed in the absence of manifest abuse. *Dickerson Construction Co.* v. *Dozier,* 266 Ark. 345, 584 S.W. 2d 36. The granting of a mistrial is an extreme and drastic remedy to which resort should be made only when it is apparent that justice cannot be done by a continuation of the trial. *Donahue* v. *Cowdrey,* 246 Ark. 1028, 440 S.W. 2d 773; *Back* v. *Duncan,* 246 Ark. 494, 438 S.W. 2d 690. This is not such a case as would justify our finding an abuse of discretion.

The judgment is affirmed.