# ARKANSAS OKLAHOMA GAS CORPORATION *v.*
## Glenn BOGGS and Ina Boggs

CA 03-956                                    159 S.W.3d 808

Court of Appeals of Arkansas
Division II
Opinion delivered April 21, 2004

*Warner, Smith & Harris, PLC,* by: *Matthew C. Carter,* for appellant.

*Bill Walters* and *Troy Gaston,* for appellees.

JOHN B. ROBBINS, Judge. Appellant Arkansas Oklahoma Gas Corporation (AOG) appeals the judgment of the Scott County Circuit Court awarding appellees Glenn and Ina Boggs

$13,735 plus interest for their land in a condemnation case tried to a jury. AOG argues that the trial judge abused his discretion by refusing to strike the testimony of two witnesses on behalf of appellees regarding the value of the land. The two witnesses were Mr. Boggs and their expert, Mr. Powell. We find no abuse of discretion in allowing their testimony, and therefore, we affirm.

To explain more fully, Mr. and Mrs. Boggs own approximately 200 acres of land just north of Waldron, Arkansas, adjacent to and east of Highway 71. AOG sought to condemn a thirty-foot-wide permanent easement on the property for a gas pipeline and also a fifty-foot by fifty-foot easement for the purpose of erecting a metering substation. The total acreage to be taken totaled 1.33 acres, and it was located nearest the highway. AOG filed a complaint for this condemnation on July 7, 2000. Mr. and Mrs. Boggs answered the complaint and asked for a jury trial to establish their just compensation for the taking. All parties agreed that the approximately 180 acres farthest away from the highway were not materially affected by the taking. The litigation focused upon the just compensation for the 1.33 acres being taken, and severance damages to the remainder of appellees' property.

Mr. Boggs testified that the highest and best use of his land prior to the taking was for development. Mr. Boggs said he purchased this particular 200-acre tract in 1989 for $100,000. Mr. Boggs said that he cleaned up the property, fertilized the land, and grew good grass. He said that there were three creeks on the property and that there were no drainage or flooding problems. The land was currently used to keep and graze cattle; there was a barn on it. Mr. Boggs believed that he could have sold his land to a developer, who could use the land close to the highway for residences or mini-farms. Mr. Boggs thought that the entire 200 acres was worth $200,000 without AOG on the land. Mr. Boggs stated that he had actually received calls from interested buyers pertaining to the land close to the highway. Mr. Boggs valued his acreage nearest the highway at $4000 per acre prior to the taking, such that just compensation for the 1.33 acres taken was $5320.

Mr. Boggs further stated that the 4.54 acres immediately outside the taking were decreased in value due to their proximity to the substation, which was marked with "no smoking" and "danger/warning" signs. Given the change on his land, Mr. Boggs believed that the land along the highway was now only useful as pasture, with a commensurate value of about $1000 per acre. This, according to Mr. Boggs, caused him to lose $13,620 of value with

regard to that 4.54 acres. Therefore, Mr. Boggs believed that the total loss to his 200-acre parcel due to AOG's taking was $18,940. Upon cross-examination by appellant's counsel, Mr. Boggs declined to guess into how many small parcels the front land could be divided. Instead, Mr. Boggs answered that he would "sell the whole thing to a developer." Mr. Boggs agreed with appellant's counsel that each of the 200 acres was not worth $4000, but he maintained that the land close to the highway was more valuable for selling. Mr. Boggs then explained again that he would sell the whole 200 acres, and that the whole 200 acres was harmed to the extent of $18,940, which was about $5000 more than his expert believed the damage to be.

AOG's counsel then moved to strike Mr. Boggs' testimony on value because he was conjuring up a "mythical subdivision" for purposes of valuation instead of considering the whole tract of land. Appellees' counsel responded that Mr. Boggs only talked in terms of dividing and plotting the front land in response to AOG's counsel asking such questions. The judge took the motion under advisement, pending the expert testimony.

Appellees called Mr. Kenneth "Pete" Powell as an expert with twenty-seven years of experience selling real estate in Scott County. Powell worked as an appraiser, received a broker's license in 1984, and had been involved in 700 to 800 real estate transactions since 1984. Powell opined that the Boggs' land, like any land along Highway 71, was the most valuable land in the county. Powell said that the Boggs' land was particularly valuable because it was north of Waldron, nearer to Fort Smith and Greenwood. Powell explained that this land was more valuable because a developer would not have to build his own roads and because advertising from the property would be visible on the well-traveled road. Powell had experience with persons interested in developing such land for residential and commercial use, and Powell himself had developed some property. Powell said he had received calls from persons in Fort Smith who were interested in residential land in that area, and Powell was aware that commercial use was existent just north of the Boggs' land.

Powell opined that prior to the taking, the majority of the land to the "back" was worth around $600-$900 per acre, and the "front" 21.3 acres was worth $5000 per acre. Powell gave the entire 200 acres an approximate value of $200,000 before AOG entered onto the land. Powell stated that he reached these figures by comparing the only recent local sales he could find along

Highway 71 of two smaller tracts: one eight-acre parcel closer to town and used for commercial purposes sold for $8000 per acre, and one twenty-acre parcel farther from town with open field and scrub timber sold for $2500 per acre. After the taking, Powell opined that the Boggs' twenty acres surrounding the taken land was harmed about seven percent, or $350 per acre. Powell justified this reduction in value because he noted that a lot of residential buyers are fearful of gas lines, particularly where warning signs are erected that say "no smoking" or "danger." Adding these figures, plus an $85 rental fee for temporary occupation by AOG, Powell assessed the just compensation for the taking at a total of $13,735.

AOG's counsel moved to strike Powell's testimony regarding the small eight-acre commercial tract because it was not a comparable property, and he moved to strike Powell's testimony regarding actual taking and severance damages because Powell's opinion was "based upon chopping it up and mythical subdivision."

Out of the presence of the jury, the judge took up the motions to strike that had been held in abeyance. AOG cited to *Arkansas Louisiana Gas Co. v. Cates*, 10 Ark. App. 426, 664 S.W.2d 897 (1984), in support of its position that both witnesses had improperly used an imaginary subdivision to increase the money to justly compensate Mr. and Mrs. Boggs. The judge agreed with AOG that it was improper for a landowner to speculate what a subdivision might bring and that the law required contemplation of the whole property for valuation purposes. However, the judge found that the testimony of both Mr. Boggs and Mr. Powell considered the total value, before and after the taking, both opining that the 200 acres were worth $200,000 before but presently at or around $180,000. The judge found that there was no "after development testimony" in this case that would justify striking either opinion. The judge specifically found that this scenario did not come within the parameters of the *Cates* decision.

The judge also denied AOG's motion to strike the testimony of Mr. Powell regarding the eight-acre commercial property used as a comparable sale. The judge found that this particular sale was recognized as a commercial sale, that Powell explained that such uses bring a higher price per acre, and that there was testimony to support that the Boggs' property had some commercial value. For these reasons, he declined to remove this evidence from the jury's consideration.

AOG presented the testimony of Don Burris, a certified general appraiser with Burris Appraisal Company, who stated that the highest and best use of the Boggs' land was pasture. Burris described the land as vacant pasture land, unzoned and outside the city limits, near or intersected by Packsaddle Creek. Burris opined that though there were a variety of uses possible for this large parcel, both residential and commercial, the most logical was pasture or farming. Burris believed that a three-mile radius demonstrated no intensive commercial or residential development, and none was anticipated, based upon observation. Therefore, Burris declined to assess a severance damage at all. However, for the actual 1.33 acres taken, Burris opined that the land was valued at $1663. Burris stated the overall value of the 200 acres at $190,000.

Burris explained that he took ten sales in the area over the past four or five years and averaged the price per acre. The prices per acre in his sample ranged from $475 - $1073, averaging out to be $805 per acre. Burris made adjustments to these averages based upon the general principle that prices per acre go down with bulk purchase, and Burris made adjustments based upon time of purchase and location of property. These adjustments increased the average per-acre price to $933 per acre. Burris noted that none of the comparable sales he used had similar highway frontage. Therefore, Burris gave a final appraised value of the whole parcel at $950 per acre based upon the entire 200 acres. However, given that only the "frontage" was being taken, and given that such frontage should command a higher price, he gave a subjective estimate that the front acres were valued at $1250 per acre as pasture land, for a total just compensation of $1663 plus a $52 rental value for work space. Mr. Burris testified that he considered the whole tract when coming to his figures, but he explained that:

> There is technique and I understand case law that says the location of the easement within the whole tract matters. ... It happens to be on the frontage so obviously that's — that requires some adjustment for its location within the tract. There's no empirical data, by that I mean there's no hard and fast data that I can analyze[.] ... The frontage is worth this more, the middle is worth about the average, and the rear is worth less. So you're just going to have to rely on some logic and some common sense. ... I adjusted upward a 1/3, a little more than a 1/3 to $1250 an acre for that property near the front.

AOG renewed its motion to strike the testimony of both valuation witnesses on behalf of appellees, asserting this as a basis

for a directed verdict on AOG's behalf. The motion was denied. The jury deliberated upon the evidence, returning a verdict assessing the Boggs' damages at $13,735. The judge entered an order reflecting that amount and granting pre-judgment interest at six-percent on that amount. This appeal followed. The issue in this case is whether the trial judge abused his discretion in permitting the testimony.

We begin with the established law in Arkansas on this topic. One approach to determination of just compensation is a formula consisting basically of two elements: (1) value of the lands taken, and (2) damage resulting to the remainder of the tract, usually referred to as severance damages. *See Ozark Gas Transmission Sys. v. McCormick*, 10 Ark. App. 210, 662 S.W.2d 210 (1984). The testimony should be first directed to the value of the lands taken and then to the damage resulting to the remainder of the tract. *See id; see also Ark. State Hwy. Comm'n v. McAlister*, 247 Ark. 757, 447 S.W.2d 649 (1969). We do not require testimony to be given in exact mechanical fashion. *See Ark. State Hwy. Comm'n v. Lee Wilson and Co., Inc.*, 43 Ark. App. 22, 858 S.W.2d 137 (1993).

A landowner is generally held to be qualified to express his opinion about the value of his property. *Ark. State Hwy. Comm'n v. Metz*, 252 Ark. 1195, 482 S.W.2d 802 (1972). A landowner is entitled to show every advantage that his property possesses, present and prospective, to have his witnesses state any and every fact concerning the property that he would naturally adduce in order to place it in an advantageous light if he were selling to a private individual, and to show the availability of this property for any and all purposes for which it is plainly adopted or for which it is likely to have value and induce purchases. *Ark. State Hwy. Comm'n v. First Pyramid Life Ins. Co. of Am.*, 269 Ark. 278, 602 S.W.2d 609 (1980); *see also Ark. State Hwy. Comm'n v. Julian Martin, Inc.*, 16 Ark. App. 288, 701 S.W.2d 389 (1985). The latitude allowed the parties in bringing out collateral and cumulative facts to support value estimates made by witnesses is left largely to the discretion of the trial judge. *Garner v. Ark. State Hwy. Comm'n*, 5 Ark. App. 134, 633 S.W.2d 710 (1982).

While it is proper for a landowner to show that his property is suitable for division into lots and that it is valuable for that purpose, it is not proper to show the number and value of such lots. *Ark. La. Gas Co. v. Cates, supra.* The measure of compensation

is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use. *See also Ark. State Hwy. Comm'n v. Allen,* 253 Ark. 46, 484 S.W.2d 331 (1972); *Ark. State Hwy. Comm'n v. Schmoll,* 248 Ark. 52, 449 S.W.2d 938 (1970). In other words, it is permissible for the landowner to testify what the highest and best use of the property is, but it is not proper for the landowner to show the number and value of such lots when such a sale or subdivision was not in progress at the time of the taking of the property. *See Ark. La. Gas Co. v. Cates, supra.* It is well settled that a motion to strike the entire testimony of a witness is properly denied where any part of that testimony is admissible. *Ark. La. Gas Co. v. James,* 15 Ark. App. 184, 692 S.W.2d 761 (1985).

■ ■ As to Mr. Boggs' opinion of what his land was worth, we see no abuse of discretion in permitting his testimony. Isolated or "loaded questions" about what land is personally worth to a landowner, in an attempt to demonstrate that a landowner is speculating value, will not render the testimony inadmissible. *See Ark. State Hwy. Comm'n v. Bowman,* 253 Ark. 890, 490 S.W.2d 112 (1973). Particularly instructive is the case of *Ark. State Hwy. Comm'n v. Steen,* 253 Ark. 908, 914-15, 489 S.W.2d 781, 784-85 (1973), where the late Justice Fogleman wrote for the supreme court:

> Considerable latitude of discretion has been allowed in admitting a landowner's opinion of the value of his property when he possesses a high degree of familiarity with the property. When the landowner has sufficient knowledge and familiarity his opinion is to be stricken when it is unrelated to any fact in the record and is apparently plucked from the air and without any fair and reasonable basis. Where, however, the landowner is intimately acquainted with the land and conditions pertaining thereto and its highest and best use, his testimony is not to be stricken simply because it is not based upon comparable sales, or solely because of the owner's lack of knowledge of property values. (Citations omitted.)

■ In that case, our supreme court affirmed the trial court's refusal to strike the testimony of one of the landowners, Mrs. Steen, regarding the condemned land's value. Though there were no comparable real estate sales in the area upon which to opine a more exact value, Mrs. Steen was very familiar with the land and countryside, she was born and raised in that county, she

had owned the land at issue for more than twenty years, she had knowledge of other land sales while traveling, and she had operated a restaurant in the area and had many inquiries about her property. Similarly, Mr. Boggs was well-familiar with his land, he had owned this piece of land for many years, he had knowledge of other land sales in the area, he had inquiries regarding this land, and he explained that he considered the entirety of the tract in coming to his final valuation of the taking. We cannot say that the trial court abused its considerable discretion regarding Mr. Boggs' opinion of the overall reduction in value of his parcel or of the value of the 1.33 acres taken from him.

As to Mr. Powell's testimony, we likewise affirm the trial court. Though there was extensive questioning of this witness regarding the decrease in value of the land along the highway where the substation and lines were installed, the final figures were explained to be in terms of a whole-parcel valuation. Appellees correctly state that AOG's counsel brought more attention to the idea of subdivision, and the trial court was correct to deny striking testimony largely brought out in cross-examination.

More importantly, as we review the testimony, the real dispute centered on what the highest and best use was; not the method of appraisal. AOG's expert witness, Mr. Burris, increased the per-acre valuation of the property where it was situated nearer the highway. AOG points this out in its brief where it says, "Mr. Burris appraised the whole 200-acre tract. He found that the taking was the more desirable part of the tract and he assigned more than average value to it." All parties thus proceeded on the same theory. The per-acre differential resulted from Mr. Burris' belief that the land was solely useful as pasture land. Mr. Boggs and his expert believed that the highest and best use was a mix of residential and/or commercial use. All parties agreed that the most remote areas were best suited to pasture. The testimony offered by both parties is within permissible limits of Arkansas law and is similar to the set of facts we affirmed in *Ark. State Hwy. Comm'n v. Lee Wilson and Co., Inc., supra.*

AOG also contests the trial judge's ruling regarding Mr. Powell on the basis that Powell relied on sales that were not comparable. We disagree. There can be no fixed definition of similarity or comparability. *Ark. State Hwy. Comm'n v. Witkowski*, 236 Ark. 66, 364 S.W.2d 309 (1963). Similarity does not mean

identical, however it does require some reasonable resemblance. *See id.* (citing the treatise Nichols, *Eminent Domain*, Vol. 5, § 21.31, p. 439). There are certain criteria of similarity that can be utilized to establish a reasonable resemblance. Important factors of similarity to be considered are location, size and sale price; conditions surrounding the sale of the property, such as the date and character of the sale; business and residential advantages or disadvantages; unimproved, improved or developed land. *See id.* No general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. *Ark. State Hwy. Comm'n v. Oakdale Dev. Corp.*, 1 Ark. App. 286, 614 S.W.2d 693 (1981). It must necessarily vary with the circumstances of each particular case. *Id.* Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court which will not be interfered with unless abused. *Ark. State Hwy. Comm'n v. N.W.A. Realty Corp.*, 262 Ark. 440, 557 S.W.2d 620 (1977); *Baker v. City of Little Rock*, 247 Ark. 518, 446 S.W.2d 253 (1969).

In this case, specifically with regard to the eight-acre commercial sale, the trial judge exercised his considerable discretion in deciding that there was some proof upon which to find that the Boggs property held some commercial value, Mr. Powell explained that commercial land as well as smaller parcels brought a higher price per acre, and Mr. Powell felt compelled to use the only contemporary sales in the area that existed along Highway 71. Mr. Powell used another contemporary sale in the vicinity of the highway that was not improved to the status of the Boggs property with scrub trees. Mr. Powell made adjustments for the size and the character of the property in arriving at a fair market value, somewhere slightly more than mid-way between fair market value of these sales. Mr. Powell was unaware of any sale of land at or near 200 acres in the area at that time. The factors bearing on similarity were their proximity to the desirable location along the highway and the time of sale.

Just because an expert witness uses a smaller tract in conjunction with an appraisal of a larger tract, that does not, as a matter of law, show that the witness had no reasonable basis for his opinion as to the fair or market value of the property condemned. *See Ark. State Hwy. Comm'n v. Ward*, 265 Ark. 578, 579 S.W.2d 603 (1979); *Ark. State Hwy. Comm'n v. Basin Dev. Corp.*,

264 Ark. 253, 571 S.W.2d 578 (1978); *Ark. State Hwy. Comm'n v. Roetzel*, 271 Ark. 278, 608 S.W.2d 38 (Ark. App. 1980). When opinion testimony as to real estate values is based only on comparable sales, it should be stricken for want of a reasonable basis when it is shown that no sale considered by the witness was of land comparable to that involved in the trial. *Ark. State Hwy. Comm'n v. First Pyramid Life Ins. Co.*, 269 Ark. 278, 602 S.W.2d 609 (1980); *Ark. State Hwy. Comm'n v. Roberts*, 246 Ark. 1216, 441 S.W.2d 808 (1969). Although the two comparable sales relied on by Mr. Powell involved significantly smaller tracts than appellees' 200 acres, their selling prices were used by Mr. Powell solely in adjusting the value of the 20 acres that bordered the highway. All of the witnesses opined that the frontage property had a greater value than the property more remote from the highway. On these particular facts, we cannot say that the trial court abused its discretion in refusing to strike Powell's testimony.

Affirmed.

NEAL and CRABTREE, JJ., agree.